**UNITED STATES of America,**

**v.**

**Pedro Jolio PRANDY–BINNET, Defendant.**

**Crim. A. No. 91–0342.**

United States District Court, District of Columbia.

Oct. 4, 1991.

Andrew Klingenstein, Peggy Kuo, Asst. U.S. Attys., Washington, D.C., for Government.

Anna Marie Gallagher, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case is before the Court on defendant, Pedro Prandy–Binnet's ("Prandy"), motion to suppress physical evidence and other "fruits" obtained on May 22, 1991 by officers of the Metropolitan Police Department. Because the procedures used by the police in this case violated the defendant's rights under the Fourth Amendment, the motion to suppress is granted.

## FINDINGS OF FACT

On August 28, 1991, the Court held a hearing on the defendant's motion to suppress. Testimony was taken from the defendant, the two arresting officers, Detective John Centrella and Detective Jeffrey Huffman, and Pretrial Services officer Lisa Camprise. In addition, the government was permitted to introduce expert testimony from Officer David Stroud of the Metropolitan Police Department. From this testimony, the following sequence of events emerges.

On May 22, 1991, Detectives Centrella and Huffman, members of the District of Columbia Police Department's Drug Interdiction Unit, were stationed at Union Station. At 5:45 p.m., the defendant, Mr. Prandy, exited from a train arriving from New York and proceeded up the escalator, the only available exit from the platform. Mr. Prandy is a young Hispanic male. The officers observed the defendant leave the escalator. They testified that he passed them walking quickly and that he made eye-contact with the officers as he went by.

At that point the officers approached Mr. Prandy, identified themselves, and began questioning him.[1] Detective Centrella testified that he asked Mr. Prandy several questions about where he had come from and his destination. Mr. Prandy told the detective that he worked in New Jersey and lived in Washington. Mr. Prandy also produced a Maryland driver's license and a one-way train ticket from New York when asked to do so by the police. Officer Centrella asked the defendant if he was carrying any guns or drugs, and Mr. Prandy responded that he was not. The police then asked the defendant if they could

---

1. There was a great deal of testimony on the issue of whether Mr. Prandy, whose first language is Spanish, understood all of the officer's communications with him. Resolution of that issue at this time is unnecessary. Because I find that the officers lacked probable cause to arrest Prandy even with the information obtained in the preceding search, whether the defendant's consent to that search was validly obtained is irrelevant.

search his small tote bag. The defendant set the bag on the floor, knelt down with detective Centrella beside him, and opened it.

As the defendant was shifting the items inside the bag, Detective Centrella noticed a purple Elizabeth Taylor's Perfume shopping bag. The defendant told the detective that the bag contained a gift, but the detective's attention was drawn to the bag. Transcript of Motion To Suppress at 17. Officer Centrella testified that as the defendant went through the other contents of the bag "a portion of what was in the shopping bag" was "squeezed out." Tr. at 16. At that moment the police officer told the defendant that he was under arrest. The defendant was handcuffed and he was taken to the police station for booking and interrogation.

What did the police officer see at that moment which caused him to tell the defendant he was under arrest? The testimony revealed that Officer Centrella saw a portion of a square object wrapped in silver duct tape. He did not touch the object, nor did he view the whole object at that time. Indeed, testimony of the two arresting officers differed significantly on the size of the object. Nor were the contents of the package field tested at that time. The package was then removed from the bag and transported with the defendant back to the station. It was "field" tested at that time and the result was positive for powdered cocaine.

### CONCLUSIONS OF LAW

#### A. The Arrest

■ As a preliminary matter, I address the events surrounding the defendant's arrest. The level of protection afforded a defendant by the Fourth Amendment depends on whether the intrusion in question is merely an investigative stop, for which only reasonable suspicion is required, or rises to the level of an arrest which requires a showing of probable cause. *Florida v. Royer*, 460 U.S. 491, 498–500, 103 S.Ct. 1319, 1324–25, 75 L.Ed.2d 229 (1983). In distinguishing a stop from an arrest the standard is that a stop "must be temporary

and last no longer than is necessary to effectuate the purpose of the stop" and that "the investigative methods employed should be the least intrusive means reasonably available." *Id.* at 500, 103 S.Ct. at 1325. The overarching principal in making such determinations is what a "reasonable person" under similar circumstances would believe. *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). I must apply an objective standard, then. If it looks like an arrest and if it sounds like an arrest, then for Fourth Amendment purposes it is an arrest.

■ Using this objective standard, I find that Mr. Prandy was placed under arrest the moment the detectives saw the duct tape. What occurred clearly sounded and looked like an arrest. Immediately upon seeing the portion of the duct taped object, the police actually advised Mr. Prandy that he was under arrest. Mr. Prandy was immediately handcuffed and taken to the police station. His possessions were confiscated. These facts would certainly suggest to a reasonable person that he was under arrest and subject to the normal constraints and searches that accompany an arrest. In addition, the police gave Mr. Prandy his *Miranda* warnings, another indication that a defendant is in custody.

The testimony shows that at the moment the police officers saw the duct tape, every person on the scene thought an arrest had been made. Both officers testified that Mr. Prandy was, to their minds, "arrested" immediately after they saw the duct tape. Mr. Prandy also indicated that he felt he was not free to leave or to refuse further search.

#### B. Probable Cause

■ In order to make an arrest, police must first have probable cause to believe that a crime has been or is being committed by the person to be arrested. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). It is important to note that such probable cause must exist before the arrest is made. The arrest may not be justified by the fruits of a search incident

**28**

to the arrest. *Id.* at 104, 80 S.Ct. at 172. *Bailey v. United States,* 389 F.2d 305, 308 (D.C.C.A.1967). Similarly, all evidence obtained by means of an invalid arrest is tainted and must also be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Since I find that the package seized, subsequently opened, and tested in this case was obtained incident to an unlawful arrest, that evidence must be suppressed.[2]

 Whether a police officer has probable cause to make an arrest should be viewed from the perspective of a prudent and cautious police officer on the scene at the time of the arrest. *Munn v. United States,* 283 A.2d 28, 30 (D.C.1971). In applying this standard to the present case, I need look no further than the testimony of police officers David Stroud, Jeffrey Huffman, and John Centrella. Officer David Stroud, the government's expert and a veteran of over 800 drug purchases, testified that the he would not arrest a person with a duct tape brick until after a field test was done. Tr. at 86. He elaborated that the appropriate police procedure would be for an officer to carry the standard field test kit with him and to test the drugs on the scene or conduct further questioning before arresting.

2. At argument the government conceded that the narcotics were seized as part of a search incident to the arrest. Tr. at 124. In its subsequent papers, however, the government has attempted to advance two alternative theories for the search independent of Mr. Prandy's arrest. First, the government claims that the defendant's initial "consent" to search the bag extended to a full search after Mr. Prandy was arrested. Second, the government argues that the removal of the brick and its opening at the station was justified under the "plain view" doctrine. Neither of these theories has merit.

The consent theory is flawed for two reasons. First, any subsequent consent of Mr. Prandy is tainted by his unlawful arrest and transport to the police department. When such unlawful arrest takes place, *Wong Sun* makes clear that "it is unreasonable to infer that [a defendant's response is] sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun, supra* 371 U.S. at 486, 83 S.Ct. at 416. Second, the person granting consent is the master of the scope of that consent. *See U.S. v. Dichiarinte,* 445 F.2d 126 (7th Cir.1971).

Officer Stroud's testimony is even more telling because it was based upon a situation where the officers observe an entire duct taped brick and handle that brick. In the present case Mr. Prandy was placed under arrest based on an observation of only part of an object wrapped in duct tape. At the time the arrest was made, the officers in this case could only see the portion of duct tape which had "squeezed" out of the shopping bag. Nor had they, by their own testimony, touched the object. The court credits Officer Stroud's testimony that the proper approach would have be to investigate further, not to immediately arrest the defendant.[3]

In support of its assertion that probable cause to arrest existed, the government cites a line of cases in which valid arrests were based upon concealment of a brick like object on the defendant's person. *See, United States v. Pace,* 709 F.Supp. 948, 953–955 (C.D.Cal.1989) *aff'd* 893 F.2d 1103 (9th Cir.1990) (bricks taped to defendant's back); *United States v. Lehmann,* 798 F.2d 692, 694–5 (4th Cir.1986) (brick-like bulge under defendant's pants). These cases are inapposite. There was no brick suspiciously taped or otherwise attached to Mr. Prandy's person. He was merely carrying a black travel bag, as many passengers must have been.

If Mr. Prandy did consent to some invasion, it was only to allow the officers to observe as he, himself, shifted the contents of his own bag. At no time did he hand the bag to the officers. Nor did he ever remove any item from the bag. Taking the duct taped object out of the bag and removing the tape from it clearly exceeded the scope of his consent, then.

The plain view theory is also flawed. In order to seize an object in plain view it must be immediately apparent to the police that the object they observe may be evidence of a crime. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). As I point out in the probable cause analysis, however, simply seeing part of an item wrapped in duct tape is not a sufficiently strong indication of criminal activity to merit this level of police invasion.

3. I decline to speculate as to what factors led the officers to make an immediate arrest in this case. I note, however, that when asked about the circumstance of a person of the Court's description, carrying a duct taped brick, at Union Station, both arresting officers testified that no arrest would have been made. Tr. at 49, 84.

The circumstances other than the duct tape similarly afforded no probable cause for a full arrest in the present case. Mr. Prandy walked quickly off the train and up the normal exit escalator. *See United States v. Bowles,* 625 F.2d 526, 528 (5th Cir.1980) (walking slowly is reason for suspicion). He looked at the two plainclothes officers who were observing the crowd as it exited the train. *See United States v. Pacheco,* 617 F.2d 84 (5th Cir.1980) (evasion of eye contact is reason for suspicion). He cooperated with the officers, producing a ticket and a driver's license which proved he was a resident of the Washington area. The officers were well within their rights in approaching Mr. Prandy to ask questions, but overreached by placing the defendant under arrest at the time they did. For this reason, the motion to suppress evidence and fruits obtained in the ensuing search is granted.