UNITED STATES of America, Plaintiff–Appellant,

v.

Pedro Jolio PRANDY–BINETT, Defendant–Appellee.

No. 91–3296.

United States Court of Appeals, District of Columbia Circuit.

Oct. 8, 1993.

Before: MIKVA, Chief Judge, WALD, EDWARDS, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.

ORDER

PER CURIAM.

ON APPELLEE'S SUGGESTION FOR REHEARING *EN BANC*

Appellee's Suggestion For Rehearing *En Banc* and the Response thereto have been

circulated to the full Court. The taking of a vote was requested. Thereafter, a majority of the judges of the Court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

ORDERED, by the Court *en banc*, that the suggestion is denied.

*Circuit Judge* HARRY T. EDWARDS would grant the suggestion. His dissenting statement, in which *Chief Judge* MIKVA, *Circuit Judge* WALD and *Circuit Judge* SENTELLE join, is attached.

Separate statement filed by *Circuit Judge* SILBERMAN concurring in the denial of rehearing *en banc*.

Separate statement filed by *Circuit Judge* RANDOLPH.

HARRY T. EDWARDS, *Circuit Judge*, with whom *Chief Judge* MIKVA, *Circuit Judge* WALD and *Circuit Judge* SENTELLE join, dissenting from the denial of the suggestion for rehearing *en banc:*

In this case, the majority reversed the trial court and held that police officers had probable cause to *arrest* a defendant upon noticing a *portion* of a package wrapped in "duct tape" in the defendant's bag. *See United States v. Prandy–Binett*, 995 F.2d 1069 (D.C.Cir.1993). So far as I can determine, there is no decision in our jurisprudence that has allowed an *arrest* predicated on such flimsy evidence of illicit activity.

After reviewing the appellant's suggestion for *en banc* review of this case, one of my colleagues wrote:

> If we posit the question as:
>
>> X steps from a train in the District of Columbia and walks rapidly through the station carrying a bag from which is emerging the corner of a package wrapped in a silver tape. Is there a probable cause to arrest X for possession of narcotics? I think the answer is no.
>
> I think an opinion that answers the question in the affirmative is a dangerous precedent. I will stand by my vote to en banc.

It seems almost an understatement to say that the majority opinion produces "a dangerous precedent." Indeed, at trial, even the Government's "expert" conceded that arrest was not justified:

> TRIAL JUDGE: If you saw me walking through the train station with a brick bag like, a cube with some tape on it like that, would you come up and arrest me for carrying narcotics?
>
> THE WITNESS: I would certainly come up and do an investigation.
>
> TRIAL JUDGE: But would that be enough to arrest me?
>
> THE WITNESS: No, sir.

Transcript of Motion to Suppress 48–49, *United States v. Prandy–Binett*, 774 F.Supp. 25 (D.D.C.1991).

The effect of the majority opinion is to erase the distinction between the degree of suspicion that justifies a *Terry*-stop and the degree of suspicion that justifies a full arrest. In fact, it is far from clear that the officers in this case had enough even to justify a *Terry*-stop. In order to justify a limited "stop" and "frisk" under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police need *more* than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27, 88 S.Ct. at 1883. In this case, however, the officers acted solely on a "hunch" based on their observation of a piece of duct tape.

The majority's probable cause analysis in *Prandy–Binett* utilizes a "conditional probabilities" test that purports to inquire "if one event occurs, how likely is it that another event will occur?" 995 F.2d at 1070. *See* J. FREUND, MODERN ELEMENTARY STATISTICS 134–40 (1973) (the "conditional probability" that two successive events will occur is the product of the probabilities of each occurrence). This test has never before, in any circuit, been used in a case involving probable cause analysis; and the Government did not urge the adoption of any such test in this case. The test is the majority's concoction, offered without support or urging, in a futile attempt to bolster an obviously flimsy record.

Further, I question the propriety of the "conditional probabilities" inquiry because (as the majority in *Prandy–Binett* admitted) probable cause analysis is *not* susceptible to mathematical formulation. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) ("The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' "). Additionally, even assuming that the formula might be helpful in some cases, the analysis in this case fails because there are no *material* facts upon which to assess any conditional probabilities. The police acted solely on the sight of a portion of a package wrapped in duct tape, which surely cannot justify an *arrest.*

Finally, the majority in *Prandy–Binett* usurped the District Court's role as factfinder by reviewing the factual record in the case *de novo.* The majority ignored the finding of the trial judge that the arresting officer saw only a "portion" of the package before arresting the defendant, and also disregarded the credibility findings of the trial judge. Such *de novo* review of the record is proscribed by our standard of review in cases involving probable cause. *United States v. Holder,* 990 F.2d 1327, 1328 (D.C.Cir.1993) (noting that "[w]e review *de novo* ... the arrest, but *we examine the court's findings of fact only for clear error* ") (emphasis added).

The judgment in this case is flatly at odds with the law of this circuit and with the Supreme Court's teachings on the difference between *Terry*-stops and arrests. The result, in my view, is a travesty of justice, because it condones "arrests" based on virtually nothing. For these reasons, and other reasons discussed in my dissenting opinion in *Prandy–Binett,* 995 F.2d at 1074, I dissent.

SILBERMAN, Circuit Judge, concurring in the denial of rehearing *en banc:*

The tone of the petition for rehearing is quite offensive. It certainly does not help the court in determining whether to rehear this troubling case. Were the petition filed by a private litigant (or the government), I would vote against a rehearing *en banc,* as I

have done before, on that ground alone. We treat criminal defendants—particularly those represented by appointed counsel—with special care, so I have tried not to allow the petition's tone to affect my vote.

It appears that Judge Randolph's opinion denying rehearing, which in substance is a reply to Judge Edwards' dissent and which would normally be styled a concurrence to the court's order, takes the peculiar design it does so as to avoid ostensibly creating a conflict with Judge Randolph's previous extraordinary statement decrying the court's "practice" of publishing dissenting and concurring opinions to orders denying rehearing.

> Judges who were members of the panel express afterthoughts, or respond to criticism contained in the *en banc* statements of other judges, or explain what the panel "really" meant.
>
> . . . .
>
> In my view, denials of rehearing *en banc* are best followed by silence. They should not serve as the occasion for an exchange of advisory opinions, overtures to the Supreme Court, or press releases.

*Independent Ins. Agents of America, Inc. v. Clarke,* 965 F.2d 1077, 1080 (D.C.Cir.1992).

I understand why Judge Randolph responded to Judge Edwards' dissent and do not think his statement is equivalent to a "press release." That he chose to do so, however, in the form of an opinion of the panel (certainly unusual for our circuit) rather than as a concurring opinion of the full court has, as should be obvious to all, utterly no legal significance in this case. Despite Judge Randolph's justification for his new opinion, *see* Judge Randolph's accompanying statement, it adds not a whit to the precedential impact of his first and therefore is functionally indistinguishable from our typical concurring opinions to the full court's order denying rehearing *en banc*—which respond to a dissent. Moreover, all concurring opinions—including those written by a judge on a panel to which apparently Judge Randolph does not object—lack precedential force. If, then, there is evil in our long time practice which Judge Randolph condemns (I believe he raises the proverbial tempest in a

teapot), it adheres as much in his unusual technique.

I gather, however, that it will not be possible for Judge Randolph to devise a way to dissent[1] from denials of rehearing *en banc.* More's the pity.

RANDOLPH, Circuit Judge:

Despite my brother Silberman's overtures, I continue to believe, for reasons previously given (*Independent Insurance Agents of America, Inc. v. Clarke,* 965 F.2d 1077, 1080 (D.C.Cir.1992)), in the unwisdom of issuing statements about a panel's decision in a case on the occasion of the court's refusal to rehear it *en banc.* However, majority opinions of the panel—the court—denying rehearing petitions are necessarily of a different order. They reflect a decision of the court just as much as the original opinion, are binding on the parties and have precedential effect. *See, e.g., Coalition for the Preservation of Hispanic Broadcasting v. FCC,* 893 F.2d 1349, 1368 (D.C.Cir.1990), *aff'd in part and vacated in part,* 931 F.2d 73 (D.C.Cir.) (*en banc), cert. denied,* —— U.S. ——, 112 S.Ct. 298, 116 L.Ed.2d 242 (1991); *Athens Community Hosp., Inc. v. Schweiker,* 743 F.2d 1 (D.C.Cir.1984); *In re Dist. No. 1—Pacific Coast Dist., Marine Eng'rs Beneficial Ass'n (AFL–CIO),* 723 F.2d 70, 79 (D.C.Cir.1983); *Steinberg v. International Criminal Police Org.,* 672 F.2d 927, 933 (D.C.Cir.1981); *Illinois Cities of Bethany v. FERC,* 670 F.2d 187 (D.C.Cir.1981).

In *Independent Insurance Agents,* 965 F.2d at 1080, I quoted Judge Friendly's view that the practice on *en banc* denials, so warmly embraced by Judge Silberman, is "dubious." The great judge made this statement in a case in which, as a member of the panel, he too had denied a petition for rehearing in a written opinion. *United States v. New York, N.H. & H.R.R.,* 276 F.2d 525,

536 (2d Cir.) (per curiam), *cert. denied,* 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960). I am at a loss to understand why my colleague regards such opinions denying rehearing in the least bit "peculiar." At any rate, it is surely correct to say of our small exchange: "The world will little note nor long remember what we say here...."

---

**1.** Judge Friendly, upon whose views expressed in *United States v. New York, N.H. & H.R.R.,* 276 F.2d 525, 533 (1960), Judge Randolph patterns his position, actually wrote a concurring opinion (not precedential) to the panel order denying rehearing after he had written the majority opinion. He then also wrote a long statement in which he, *inter alia,* objected to a judge not on the panel (Judge Clark) writing a *dissent* from the denial of rehearing. Although Judge Friendly seems to have virtually monopolized the whole volume of the Federal Reporter writing on that case, he did not object in principle to opinions concurring from denials of rehearing (such an opinion would, of course, have agreed with him). So, in that respect, Judge Randolph who condemns concurring and dissenting opinions alike seems to have exceeded his model.