**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Arturo TORRES and Ramon R. Vargas–
Hernandez, also known as Ramon
Vargas, Defendants–Appellees.**

**No. 93–2854.**

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1994.

Decided July 22, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 16, 1994.

Suzanne M. Wissmann (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellant.

Stanley P. Stasiulis (argued), Office of the Federal Public Defender, Benton, IL, for Arturo Torres.

Paula Phillips (argued), Phillips Law Office, Effingham, IL, for Ramon R. Vargas–Hernandez.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The United States appeals an order after a suppression hearing before trial suppressing 1) some 450 pounds of marijuana discovered in a trailer that was being towed by a Chevrolet· Blazer in which defendant Arturo Torres, the owner, was a passenger and which Ramon Vargas–Hernandez ("Vargas") was driving, and 2) post-arrest inculpatory statements made by the defendants about the marijuana. We reverse and remand.

### FACTS

On February 18, 1993, a grand jury issued an indictment alleging that Torres and Vargas "did knowingly and intentionally possess with intent to distribute more than 100 kilograms of marihuana, [sic] a Schedule I Controlled Substance in violation of Title 21 United States Code, Section 841(a)(1)." The marijuana was discovered and seized pursuant to a consensual search of Torres's trailer during a routine motor vehicle stop (speeding). On March 5, 1993, Torres and Vargas entered pleas of not guilty. Torres filed motions to suppress the marijuana and any inculpatory statements he may have made following his arrest, arguing that he did not consent to the search of the container in which the drugs were found and nor had he been advised of his *Miranda* rights prior to making his statements and that at no point did he waive those rights.

The trial judge held the suppression hearing on April 23, 1993. Vargas, who did not testify at the suppression hearing, made an oral motion which the court allowed to adopt and incorporate Torres's motions to suppress both the drugs and post-arrest statements.

The district judge proceeded to hear testimony from Illinois State Police Trooper Richard Pizoni, Investigator John Nagle, and defendant Torres.

During the hearing, Trooper Pizoni stated that on February 1, 1993, at approximately 1:50 p.m., while patrolling Interstate 57 in Williamson County, Illinois, with his partner Trooper McConnell, he observed a 1985 Chevrolet Blazer towing a closed "16 or 18 foot" customized horse trailer, exceeding the posted speed limit of 55 mph. As the troopers pulled near the vehicle, the truck and trailer floated between the "fog line" and center line. The officers also noticed that the trailer's rear license plate was obstructed from view by the trailer's folding mesh ramp. Officer Pizoni testified that they activated the squad car's warning lights and directed the driver to pull the vehicle and trailer to the side of the road. After the motor vehicle stop Officer McConnell conversed with the driver, Vargas, while Officer Pizoni spoke with Torres, the passenger. According to Pizoni, Torres stated that he was traveling to East Chicago, Indiana, to visit his sister, and Vargas stated to Officer McConnell that he (Vargas) was traveling to East Chicago, Indiana, to look for employment. Pizoni stated that he and McConnell obtained Vargas's and Torres's driver's licenses and determined that Torres owned the truck and trailer. They returned to their squad car to run checks on the driver's licenses and any criminal history, including arrest warrants, and learned that both men had "criminal histor[ies]."

Pizoni issued Vargas a written warning for speeding, improper display of license plate, and improper lane usage. Vargas signed for receipt of the written warning, and was told he was free to go at this time. Pizoni asked Torres and Vargas if they had any contraband such as marijuana, cocaine or other drugs in their possession, to which they both replied in the negative, and at this time the trooper also requested permission of each of the defendants to "look[ ] through [the] vehicle."[1] Torres and Vargas each gave their

---

1. Pizoni explained that he asked whether the men had drugs and then for consent to search because "they were extremely helpful, kind of

over helpful. When I asked them if they did have any contraband, their reaction to me just

oral consent in addition to their approving and signing a written consent to search form, which read:

> "I, [_____], hereby grant my consent to officers of the Illinois State Police and other law enforcement officers assisting them to search the following: [1985 blue Chevrolet pickup truck and trailer], including any part, compartment, or trunk of the vehicle and the contents of any object or container found therein.... I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form. I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been used to cause me to consent to the search described above or to sign this form."

The form was dated February 1, 1993, 2:03 p.m., and signed by each of the defendants Torres and Vargas.

Trooper Pizoni stated that after receiving the written consent from Torres (owner), and from Vargas, to search the truck and trailer, "including any part, compartment, ... and the contents of any object or container found therein," the officers "asked both subjects, 'Please, step back to the front of our [squad] car'." At this point in time the state troopers searched the Blazer. Following the search of the truck, the police asked Torres to provide the key to the trailer, and Torres complied. After unlocking the trailer and entering it, Trooper McConnell discovered a wooden box-like compartment near the front of the trailer underneath some couch pillows. The pine board and plywood compartment was secured with "six shiny new screws," and was "about a foot wide, four-and-a-half feet tall, running the width of the nose of the trailer." Trooper McConnell asked his partner for a screwdriver. After releasing the screws and allowing for the removal of the compartment's cover, Officer McConnell discovered approximately 450 pounds of marijuana, valued at "anywhere from nine hundred thousand to one million dollars."

didn't appear right. They seemed to be nervous."

Torres and Vargas were arrested and charged with possession of marijuana with intent to distribute and were transported to the Williamson County Sheriff's Office. At the Sheriff's Office, Illinois State Police Investigator John Nagle individually advised Torres and Vargas of their *Miranda* rights. Investigator Nagle testified that after orally advising Torres and Vargas of their *Miranda* rights, he handed each of the defendants a copy of the waiver of rights form, and observed the defendants sign the form.[2] Nagle testified that after signing the forms, Torres stated that he had been "hired by ... two guys that he met down in McAllen, Texas, ... to drive the cannabis[, and] that he was going to get paid $10,000 for this trip." Torres further stated that he was to give $2,000 of the $10,000 to Vargas. Investigator Nagle testified that Vargas told him that he was aware that the trailer contained marijuana and that Torres had hired him to assist in its transportation, and further that Torres advised him that he would be paid well for his assistance. Torres contradicted Investigator Nagle, testifying at the suppression hearing that Nagle did not read him his *Miranda* rights until after the completion of the interview.

At the conclusion of the hearing, the parties requested the opportunity to submit written briefs. The court granted the request and adjourned the matter for review and decision. Although Torres and the government subsequently presented their written arguments to the court, Vargas did not submit a post-hearing brief. Thereafter, the district court granted the defendants' joint motions to suppress the marijuana and post-arrest statements. The court held that although Torres's and Vargas's consents to search were voluntarily given, Officer McConnell's search of the wooden compartment exceeded the scope of the defendants' consent because the defendants had not consented to "the dismantling of the fabric of the container." The court stated that "[w]hen the troopers in this case found the compartment in the trailer they needed one

**2.** Defendant Vargas received a form printed in Spanish after Vargas stated that he preferred reading Spanish to English.

of two things; *either* probable cause to believe that the compartment contained drugs *or* additional consent from defendant specifically to dismantle and search the compartment. The troopers had neither." The court then noted that there was a dispute as to when the defendants were advised of their *Miranda* rights, but determined that "[t]he issue need not be reached, however, for the Court has already held that the search of the compartment in the trailer exceeded the scope of consent and was therefore illegal. The subsequent arrest and questioning, were products of the illegal search." The court granted the defendants' motions to suppress and ordered the marijuana found in the compartment as well as the defendants' post-arrest statements suppressed.

Following the granting of the motions to suppress, the government filed a motion requesting reconsideration of the court's ruling. The government argued, among other things, that defendant Vargas lacked standing to challenge the seizure of the marijuana because he had no interest in the ownership of the area searched and thus had no reasonable expectation of privacy in the trailer. The government noted that unlike Torres, Vargas did not testify at the suppression hearing, nor did he submit any affidavits to the court, and that it was undisputed that Vargas owned neither the Blazer nor the trailer containing the marijuana. The government argued that Vargas's attorney's questions at the suppression hearings were designed to demonstrate that Vargas was an innocent passenger who was "just riding along to Chicago with Mr. Torres," not to establish that Vargas had a legitimate expectation of privacy in the trailer. The court denied the motion to reconsider its order suppressing the drugs and post-arrest statements without reference to the government's argument that Vargas lacked standing to challenge the seizure of marijuana. The government appeals.

## ISSUES

On appeal we are confronted with four issues dealing with the suppression hearing: 1) whether the government waived its right to raise the issue of Vargas's standing; 2) whether Vargas does in fact have standing to challenge the search of the compartment inside the trailer; 3) whether the officer's search of the wooden container exceeded the scope of the consent to search; and 4) whether the suppression of the defendants' post-arrest inculpatory statements was proper.

## DISCUSSION

### I. Suppression of the Marijuana
#### A. Vargas's standing

The government argues that Vargas lacks standing to challenge the seizure of the marijuana found in Torres's trailer. In response, Vargas contends that the government waived the issue of standing by failing to raise the issue prior to the court's order suppressing the evidence.

The government does not waive its right to challenge a defendant's standing when "no facts were adduced at the hearing from which the government could reasonably have inferred the existence of the defendant's standing," *United States v. Cardona*, 955 F.2d 976, 982 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 291 (1992), which is what happened in this case. Vargas failed to testify, submit affidavits, or present any other factual evidence, much less legal argument, from which the government could infer that Vargas was contending that he had a legitimate expectation of privacy in the trailer and therefore had standing to challenge the seizure of marijuana. Because "no facts were adduced at the hearing from which the government could reasonably have inferred the existence of the defendant's standing," we conclude the government did not waive its right to challenge defendant Vargas's standing. *Id.* We turn to the issue of whether Vargas has standing to contest the seizure of marijuana from Torres's trailer.

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *United States v. Fuesting*, 845 F.2d 664, 671 (7th Cir.1988) (citing *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969)). "It has long been the rule that a defendant can urge the suppression of evidence obtained in viola-

tion of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla,* —— U.S. ——, ——, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993). To establish that he has standing to claim that his Fourth Amendment rights were violated, Vargas must demonstrate that he had a legitimate expectation of privacy in the premises searched or the items seized. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). "A legitimate expectation of privacy is an expectation actually and subjectively held by the defendant and one which society is prepared to recognize as reasonable." *United States v. Tobin,* 890 F.2d 319, 324 (11th Cir.1989) (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)). "A defendant objecting to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched." *United States v. Duprey,* 895 F.2d 303, 309 (7th Cir.1989).

■ In this case, dealing with the court's ruling following the suppression hearing before trial, Vargas lacks standing to challenge the seizure of the marijuana because he failed to submit evidence such as testimony or affidavits that he had a legitimate expectation of privacy in the area searched (trailer) or the item seized (marijuana). In fact, rather than attempting to assert a legitimate expectation of privacy, at the suppression hearing Vargas attempted to establish that he had no connection or relation to the trailer or marijuana, and that he was but a mere passenger on the trip from McAllen, Texas, to East Chicago, Indiana. For example, Vargas's counsel established, through cross-examination of Officer Pizoni, that 1) the vehicle was registered to Torres; 2) there were no papers in the vehicle demonstrating that Vargas had "ownership or right of possession of th[e] trailer"; 3) Torres gave the police the key to the trailer; 4) the police "didn't bother to ask Mr. Vargas for the [trailer] key"; 5) at the time of the arrest, the police had no reason "to believe that [Vargas] had anything at all to do with the marijuana that was concealed in Mr. Torres's trailer," and 6) Vargas "was just riding along with Mr. Torres[.]" Moreover, it is undisputed that Torres was the owner of the Blazer and trailer, not Vargas. While this circuit has recognized that a driver who does not own the vehicle he is operating may possess standing to challenge a search of the automobile, *United States v. Garcia,* 897 F.2d 1413 (7th Cir.1990), that case and the cases upon which it relies make clear that the driver must present evidence establishing that he has a legitimate expectation of privacy in the area searched or the object seized. *Cf. Cardona,* 955 F.2d at 981 (passenger in automobile without possessory interest therein lacks standing to challenge inculpatory evidence found within vehicle); *United States v. Jefferson,* 925 F.2d 1242, 1249–50 (10th Cir.) (driver of vehicle), *cert. denied,* —— U.S. ——, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991). Because Vargas failed to present any evidence establishing a legitimate expectation of privacy in the trailer or the drugs, we conclude he is without standing to challenge the seizure of the marijuana found, and we hold that the district court erred in suppressing the stash of marijuana insofar as it concerns Vargas.

### B. Torres

■ Torres contends that the court did not commit error in suppressing the marijuana because the police had no right to dismantle the wooden container containing the drug and Officer McConnell's search of the trailer exceeded the scope of the consent he had given. The government asserts that McConnell's releasing of the screws holding the container (wooden box) was within the scope of the written consent given by the defendants, because the waiver form, signed by Torres, stated that the police could search the Blazer and the trailer, *"including any part, compartment, or trunk of the vehicle and the contents of any object or container found therein."*

"A consensual search is manifestly reasonable so long as it remains within the scope of the consent." *United States v. Martinez,* 949 F.2d 1117, 1119 (11th Cir.1992) (citing *Florida v. Jimeno,* 500 U.S. 248, 249, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991)). "[T]he scope of a consent search is limited by the

breadth of actual consent[,]" *Garcia*, 897 F.2d at 1419, and "[w]hether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of all the circumstances." *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1803–04.

■ In the case at bar, the very language of the consent form, "including any part, compartment, or trunk of the vehicle and the contents of any object or container found therein," could not be clearer. In our opinion Torres consented to the search of the contents of any part or of the trailer, including the contents of any object or container found inside the trailer. His argument that the wooden box in which the marijuana was ultimately discovered was not a "container" or "a compartment" is without merit. A "container" is "[a] thing in which material is held or carried; receptacle." *American Heritage Dictionary of the English Language* 287 (1970). A "compartment" is a "separate room, section, or chamber[.]" *American Heritage Dictionary of the English Language* 271 (1970). These definitions precisely describe the wooden box in which Torres and Vargas transported the marijuana. Moreover, we note that "[p]ermission to search a specific area for narcotics … may be construed as permission to search any compartment or container within the specified area where narcotics may be found." *Martinez*, 949 F.2d at 1119; *Garcia*, 897 F.2d at 1419–20 ("Without more, police can only search areas [that drug] items may reasonably be expected to be found. The opening of door panels is not normally included in this set of areas to be searched"). Obviously in this case marijuana could have been, and in fact was, discovered within the wooden compartment.

The Supreme Court has specifically rejected the argument that the police must separately request permission to search each closed container within a car. *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1804 ("[W]e see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness…. If [the defendant's] consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization"). Here, Torres was well aware that the police were looking for drugs since Trooper Pizoni had asked him whether he was in possession of narcotics; as the Supreme Court noted in *Jimeno*, "[a] reasonable person may be expected to know that narcotics are generally carried in some form of container. Contraband goods rarely are strewn across the trunk or floor of a car." *Id.* If Torres did not wish the officers to search inside the wooden box, he was free to "delimit as he chooses the scope of the search to which he consents." *Id.* Rather than withdrawing or limiting the broad and all-inclusive consent previously given, Torres during the search failed to object and stood by silently as Officer McConnell called for, received, and used a screwdriver to open the wooden box. *See United States v. Martel–Martines*, 988 F.2d 855, 858 (8th Cir.1993) (defendant's "failure to object [to search] made it objectively reasonable for the officers to conclude that his general consent to search the truck included consent to access the compartment in a minimally intrusive manner"); *Espinosa*, 782 F.2d at 892 (defendant's failure to object to search while defendant stood by and observed search "may be considered an indication that the search was within the scope of the consent"). We conclude that under the totality of the circumstances, an objective, reasonable person would have understood that by signing the consent to search form used in this case, the defendant agreed to allow the police to search the wooden container in which the marijuana was discovered.

■ Finally, we address Torres's argument that suppression of the drugs was proper because the police had to unscrew the compartment in order to gain access to its contents. We agree that "general permission to search does not include permission to inflict intentional damage to the places or

things to be searched." *Martinez,* 949 F.2d at 1119; *see also Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1804 ("[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk"). Torres has not alleged that the container or the trailer were damaged by Officer McConnell's act of removing the six screws. Moreover, police who have obtained a consent to search form as broad and valid as the form in this case may open locked containers, provided that the container to be opened is capable of holding the object of the search and that the opening of the container does not involve the unnecessary infliction of damage. *See Martel–Martines,* 988 F.2d at 858 n. 3 (use of screwdriver to puncture small hole in metal compartment hidden underneath truck bed reasonable; officers "were unable to find any entry to the compartment and did not have late-night access to the garage tools necessary to remove the compartment from the truck"); *Martinez,* 949 F.2d at 1120–21 (approving prying open of car trunk because "reasonable, nondestructive removal of impediments was necessary to search for contraband and to gain access to other areas or compartments within the scope of the search"); *United States v. Milian–Rodriguez,* 759 F.2d 1558 (11th Cir.) (defendant's consent to search included authorization to pick the lock on closet door), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985)); *cf. United States v. Strickland,* 902 F.2d 937 (11th Cir.1990) (defendant's consent to search automobile did not reasonably include consent to slash open spare tire). In the case before us, Officer McConnell merely released and withdrew six screws in order that he might inspect the contents of the compartment (wooden box) to ascertain whether the defendants had drugs concealed therein; he did not "dismantl[e] the fabric of the trailer[,]" as the district court found. In addition, we note that it was necessary for Officer McConnell to remove the screws in order to effectuate the officers'

intent that the trailer, including any container found therein, be searched. *See Martinez,* 949 F.2d at 1121. We conclude that it was objectively reasonable for Officer McConnell to believe that the scope of Torres's consent permitted him to open the wooden container within the trailer by unscrewing the six screws. Because the search of the wooden box did not exceed the scope of the consent Torres gave authorizing entry and search of the motor vehicle and trailer, the defendant has not alleged his box or trailer was damaged, and he did not timely object to the search of the container, we hold that the court committed clear error in suppressing the marijuana on the grounds that Officer McConnell's search exceeded the scope of Torres's consent.

## II. Post–Arrest Statements

Because the trial court determined that the police search of the wooden container exceeded the scope of the consent given to search, the judge suppressed both defendants' post-arrest statements as products of the illegal search. Inasmuch as we have determined that the search of the container was proper and not outside the scope of the consent given by Torres, the suppression of the defendants' post-arrest statements on the grounds of an illegal search was erroneous. We therefore remand this cause to the district court with instructions to address on the merits the issue of whether the defendants' inculpatory post-arrest statements were given in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[3]

## CONCLUSION

Because defendant Vargas failed to establish that he possessed a reasonable expectation of privacy in the trailer, Vargas lacks standing to challenge the seizure of the marijuana, and as a result the district court erred in suppressing the contraband with respect

---

**3.** The record is unclear as to whether Vargas has claimed that he did not waive his *Miranda* rights prior to giving his statements. (At the suppression hearing Vargas orally joined Torres's motions, one of which sought to exclude Torres's post-arrest statements on the ground of an alleged *Miranda* violation. However, the record does not establish that Vargas has otherwise presented such a claim, and Vargas did not so argue in his appellate brief.) On remand, the district judge must determine whether Vargas has alleged a *Miranda* error and proceed accordingly.

to Vargas. With respect to defendant Torres, we hold that the court erred in suppressing the marijuana because the search of the wooden box inside the trailer was within the scope of Torres's written consent.

The district court did not address the merits of the defendants' motion to suppress their post-arrest statements. Rather, the judge premised his order suppressing Vargas's and Torres's statements based solely on his erroneous conclusion that the search of the wooden box was illegal. Because we have determined that the search of the wooden box was proper, the court's justification for suppressing the defendants' statements is no longer valid.

We reverse the district court's order requiring the suppression of the marijuana seized from the trailer as well as the suppression of the post-arrest statements and remand the cause to the district court with instructions to address the defendants' motion to suppress their post-arrest statements on the merits.

REVERSED AND REMANDED.