67 F.3d 302
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Richard A. SMITH, Defendant-Appellant.
 No. 94-3488.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 12, 1995.
Decided Sept. 20, 1995.
 
 Before FLAUM, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Richard Smith was charged with possession with the intent to distribute a controlled substance (Count I), 21 U.S.C. Sec. 841(a)(1), using and carrying a firearm during a drug-trafficking crime (Count II), 18 U.S.C. Sec. 924(c), and being an illegal alien in possession of a firearm in interstate commerce (Count III), 18 U.S.C. Sec. 922(g)(5). After a jury trial, Smith was convicted on all counts. Smith was sentenced to 76 months' imprisonment to be followed by a two-year term of supervised release. New counsel was appointed and a timely notice of appeal was filed. Smith's counsel filed a motion to withdraw and an Anders brief in which he stated his belief that an appeal would be frivolous. Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), Smith was informed of his right to respond, which he did. We will grant the motion to withdraw only if we are convinced that the possible issues for appeal are "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993) (citing McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988)). Our independent review of the record reveals that there are no issues for appeal that can be considered non-frivolous.
 
 I. Issues Concerning the Trial
 
 2
 In his Anders brief, Smith's counsel raises one possible claim: that the district court erred in failing to suppress the seizure of the controlled substances and weapon found in Smith's vehicle. We agree that this claim is meritless.
 
 
 3
 In reviewing a district court's disposition of a motion to suppress, two standards of review are applicable. First, "[w]e must assess the district court's understanding of any applicable substantive legal standard on a de novo basis." United States v. D.F., No. 94-2900, 1995 WL 502783, at * 5 (7th Cir. Aug. 25, 1995). However, "a district court's factfinding in support of its disposition of a pretrial motion to suppress is reviewed under a clearly erroneous standard." Id. At trial, Smith's counsel presented two grounds for relief in his motion for suppression: (1) that the initial stop of Smith's vehicle was a pretext to search for contraband; and (2) that the search of Smith's vehicle exceeded the scope of Smith's consent to search.
 
 
 4
 In denying Smith's motion to suppress, the district court relied upon the suppression hearing testimony of Troopers Richard Pisoni and John Lewis of the Illinois State Police. This testimony provided the following. On April 22, 1994 at 10:00 a.m., Trooper Pisoni was sitting in his police car on a median along Interstate 57 in Williamson County, Illinois running radar. Pisoni observed a White Buick speeding; radar confirmed that the car was traveling 71 miles per hour in a 60 mile per hour zone. Smith was driving the vehicle. Pisoni caught up to the vehicle and radioed for a check on the vehicle's license plate (the plates were from Texas). Pisoni was told that there was no record of the vehicle. Pisoni then activated his lights and stopped the vehicle. Smith pulled over to the side of the road. Pisoni approached Smith's vehicle and asked for insurance papers, vehicle registration, and a driver's license. Smith gave Pisoni his driver's license but was unable to produce registration or insurance papers on the vehicle. Smith stated that the vehicle was owned by someone named "Raquel" and that he was driving it from Houston to Chicago for her because she was moving to Chicago. Pisoni asked Smith if he knew where in Chicago he was going. Smith said that he didn't but that he was supposed to call when he got to Chicago at which point he would obtain directions to drop off the car.
 
 
 5
 As Pisoni was going back to his vehicle to run a license check on Smith, Trooper John Lewis arrived at the scene to aid Pisoni. Pisoni informed Lewis that Smith was nervous, that it wasn't his car, and that Smith did not know the last name of the owner. Lewis walked up to Smith's vehicle while Pisoni was performing the license check. Lewis then questioned Smith who told Lewis that he was taking the car to Chicago for "Raquel," then flying back to Texas. Smith did not know Raquel's last name and was unable to say where he was going in Chicago. Pisoni completed the license check which revealed that Smith had a valid California driver's license and that he had a criminal history involving drugs and possession of a stolen motor vehicle. Pisoni also ran the Vehicle Identification Number to make sure that the car was not stolen. The car was recorded as the property of AllState Salvage. Pisoni then issued Smith warning tickets for speeding and for driving an uninsured vehicle. Pisoni asked Smith to get out of his car and explained why he issued the warnings. Pisoni then asked Smith whether he had ever been arrested before and Smith said no. Pisoni asked Smith why AllState Salvage was the owner of record and not Raquel. Smith responded that he did not know. Pisoni gave Smith his paperwork back and advised him that he was free to go. As Smith was leaving, Pisoni asked Smith if he had any drugs and Smith said no. Pisoni then asked Smith for consent to search his vehicle. Pisoni's decision to request permission to search the vehicle for drugs was based on Smith's failure to tell him the name of the owner of the vehicle, his lying about never having been arrested, and his nervousness.
 
 
 6
 Smith gave Pisoni verbal consent to search the vehicle, and went back to his car to get his keys to the trunk. Pisoni then asked Smith if he would give written consent to search his vehicle. Pisoni gave Smith a written consent form which Smith read and signed. Pisoni and Lewis also signed the form. Smith then opened the trunk and Pisoni started looking through the trunk area. At about the same time, Lewis began searching the driver's side of the vehicle, front to back. Lewis then walked around the vehicle to search the passenger's side. Lewis noticed that the window on the front passenger's side of the vehicle only rolled down about six or seven inches. Lewis became suspicious and ran his hand across the inside interior portion of the door. Based on past experience, Lewis suspected that some type of contraband (most likely drugs), was being hidden in the interior of the door. Lewis was able to look through the opening of the door panel and was able to see several packages covered with duct tape hidden inside the door. Lewis suspected these packages to contain controlled substances. Lewis then informed Pisoni and Sergeant Mueller, who had recently arrived on the scene, what he had found. Mueller came up to the door, pulled out his pocket knife and put a small hole into one of the packages revealing a green, leafy substance. Although Mueller had to pull back the door panel, he was able to reach the package without dismantling the door. Thereafter, the vehicle was taken to the Williamson County Sheriff's Department where the front passenger door was dismantled. A search of the door revealed eight packages wrapped with silver duct tape, all containing marijuana, and a pistol wrapped in a red towel.
 
 Pretext
 
 7
 The test for reviewing the lawfulness of an allegedly pretextual stop or arrest is an objective one. "[I]f there was probable cause to make the stop, and if the stopping officer was acting with authority, the stop was not pretextual." United States v. Willis, 61 F.3d 526, 530 (7th Cir.1995). Here, the initial stop of Smith was proper--Trooper Lewis' radar indicated that Smith was travelling 71 miles per hour in a 60 mile per hour zone. Any claim that the stop was pretextual would be without merit.
 
 Scope of Consent
 
 8
 As we have held, " 'the scope of a consent search is limited by the breadth of actual consent...." United States v. Torres, 32 F.3d 225, 231 (7th Cir.1994) (quoting United States v. Garcia, 897 F.2d 1413, 1419 (7th Cir.1990)), cert. denied, 115 S.Ct. 912 (1995). " 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of all the circumstances.' " Torres, 32 F.3d at 231 (quoting United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986)). " 'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?' " Torres, 32 F.3d at 231 (quoting Florida v. Jimeno, 500 U.S. 248, 249 (1991)).
 
 
 9
 Pisoni's request to search Smith's vehicle was directly linked to his inquiry regarding the presence of drugs in the vehicle. Although a search of the interior of a car door is not normally within the scope of a general consent to search an automobile for drugs, see United States v. Garcia, 897 F.2d 1413, 1419 (7th Cir.1990), in the instant case, Smith signed a consent form authorizing a search of Smith's vehicle "including any part, compartment, or trunk of the vehicle and the contents of any object or container found therein." Government's Exhibit 1. During the course of his search of Smith's vehicle, Tooper Lewis observed that the front passenger window went down only partially and that the interior door panel was loose, indicating that the interior portion of the door was a compartment possibly containing contraband. Since Smith gave consent to search "any compartment," a search of the interior of the front door was proper. See Torres, 32 F.3d at 228, 231 (while searching defendant's vehicle, officer discovered a wooden box-like compartment near the front of the trailer hidden underneath couch pillows; since defendant consented to a search of any compartment in the vehicle, subsequent search of wooden box found to be within the scope of the defendant's consent). Smith's failure to object to the scope of the search is further evidence that Smith's consent to search included the search of the interior of the front passenger door. See id. at 231.
 
 
 10
 However, the extent of the search of the interior of the door may have exceeded Smith's consent. Although the search began with Lewis observing packages through the opening of the door panel, and Mitchell pulling back the door panel to extract a "leafy green substance" from one of the packages, it ended with the dismantling of the door at the Williamson County Sheriff's Department. It is well-settled that "permission to search does not include permission to inflict intentional damage to the places or things to be searched.' " Torres, 32 F.3d at 231-32 (quoting United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir.1992)). Nonetheless, the door was not dismantled until after the police obtained probable cause to believe that it contained contraband. By looking through the opening of the door panel, Lewis observed several packages wrapped with duct tape hidden inside the door. By pulling back the door panel (without dismantling it), Sergeant Mueller was able to puncture one of the packages, revealing a green, leafy substance which was believed to be marijuana. These discoveries, clearly within the scope of Smith's consent to search "any compartment" of the vehicle, provided sufficient probable cause to dismantle the interior panel of the door.[1]
 
 
 11
 Accordingly, any challenge to the district court's failure to suppress the evidence would be without merit.
 
 
 12
 In his response to counsel's motion to withdraw, Smith reiterates counsel's argument that the district court erred in denying his motion to suppress. However, Smith also claims that the district court improperly refused to allow discovery of a recording of the police radio transmissions made during the stop and search of Smith's vehicle. Smith argues that this recording would have demonstrated that the search was unconstitutional. The record indicates that counsel filed a motion to preserve evidence of these radio transmissions. This motion was granted by the district court. There is no indication in the record that the district court ever refused admission of these transmissions; nor is there any indication that these transmissions would have exculpated Smith. Since the record does not contain any indication that this claim is of arguable merit, it cannot be reviewed on direct appeal.
 
 
 13
 After an independent review of the trial proceedings, we find that there are no non-frivolous issues for appeal.
 
 II. Sentencing Issues
 
 14
 Appellate review of a sentence imposed under the guidelines is limited to cases where the sentence is (1) in violation of the law, (2) a result of the incorrect application of the guidelines, (3) greater than the sentence specified in the applicable guideline range, or (4) plainly unreasonable and imposed for an offense for which there is not guideline. 18 U.S.C. Sec. 3742(a)(1)-(4). Hence, "[a]bsent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range." United States v. Solis, 923 F.2d 548, 551 (7th Cir.1991). To establish whether Smith's sentence meets any of the criteria of review, we must first decide whether he was sentenced in compliance with the United States Sentencing Guidelines.
 
 A. Application of Sentencing Guidelines
 
 15
 Our independent review reveals that the guidelines were correctly applied to Smith's case. Smith was convicted of possession with the intent to distribute marijuana, 21 U.S.C. Sec. 841(a)(1), using or carrying a firearm during a drug trafficking crime, 18 U.S.C. Sec. 924(c), and possession of a firearm by an illegal alien, 18 U.S.C. Sec. 922(g)(5). Since Smith was in possession of 4,994 grams of marijuana, his base offense level under U.S.S.G. Sec. 2D1.1(c) for Count I was 12 points. Under U.S.S.G. Sec. 2K2.1(a), Smith's base offense level for Count III was also 12 points. Counts I and III were grouped under U.S.S.G. Sec. 3D1.2, resulting in a total group offense level of 12. The PSR calculated Smith's total criminal history points to be 1, establishing a criminal history category of I. With a criminal history category of I and an offense level of 12, the applicable guidelines range on these counts was 10-16 months' imprisonment. Smith was sentenced to a term of 16 months' imprisonment on Counts I and III. Regarding Count II, pursuant to U.S.S.G. Sec. 2K2.4, 18 U.S.C. Sec. 924(c) dictates the sentence to be imposed. The statutory penalty under Sec. 924(c) is a five-year term of imprisonment to be served consecutive to any other term of imprisonment imposed. Accordingly, on Count II, Smith was sentenced to a five-year term of imprisonment to be served consecutive to his 16 month term of imprisonment of Counts I and III. We can find no error in the district court's application of the Guidelines.
 
 B. Compliance with Rule 32
 
 16
 We must also determine whether Smith was sentenced in compliance with Fed.R.Crim.P. 32. Rule 32(a) requires that the district court timely provide the defendant with a copy of the presentence report and afford counsel an opportunity to state objections to the report and comment on matters relating to the sentence. The sentencing report was received by Smith prior to sentencing. (Sentencing Tr. at 2-3.) Counsel did not object to any of the factual findings contained in the report. Id. at 4. The court asked Smith if he had read the report and whether there were any errors in the report or any additions which Smith might wish to make. Id. at 3. Other than a minor discrepancy which was quickly corrected, Smith did not object to the report. Id. at 4. Finally, Smith was advised of his right to appeal his conviction and sentence. Id. at 9. Accordingly, any claim based on a violation of Rule 32 would be groundless.
 
 
 17
 Counsel's motion to withdraw is GRANTED and Smith's appeal is DISMISSED.
 
 
 
 [1]
 Although the record does not indicate whether the dismantling of the door was done pursuant to a warrant, since there was sufficient probable cause, none was needed--" 'Under the 'automobile exception' to the warrant requirement, a car may be searched without a warrant if there is probable cause to believe that the car contains contraband or evidence.' " United States v. Matthews, 32 F.3d 294, 298 (7th Cir.1994) (quoting United States v. McGuire, 957 F.2d 310, 314 (7th Cir.1992))