## UNITED STATES of America

v.

## Victor Manuel DOMINGUEZ.

### Criminal No. L–95–241.

United States District Court,
S.D. Texas,
Laredo Division.

Dec. 26, 1995.

Juan Ramon Flores, Federal Public Defenders Office, Laredo, TX, Adriana Arce–Flores, Fed. Public Defender, Laredo, TX, Victor Manuel Dominguez, Rio Bravo, TX, for defendant.

Yvonne Salinas Gonzalez, U.S. Attorneys Office, Laredo, TX, for U.S.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is this Defendant's motion to suppress, which was heard on December 21, 1995. The motion involves the search of the Defendant's residence at 1807 Centeno in Rio Bravo, Texas. Law enforcement agents went to the house because of an anonymous tip indicating that the Defendant had three bundles of marihuana stored in the attic of the house.

■ The agents secured an oral and written consent to search from the Defendant's wife. Prior to giving consent, Mrs. Dominguez was specifically told that the agents were looking for marihuana. While she was not told specifically that they wanted to look in the attic, the agents did ask her if there was an attic in the home. After being fully apprised of her rights, including the right to refuse consent, Mrs. Dominguez signed a form authorizing "a complete search of the premises."

There is no serious dispute that Mrs. Dominguez had full authority to grant consent and did so freely and voluntarily. The argument concerns the scope of the search. As predicted, the marihuana was found in the attic. The agents noticed a square portion of the hall ceiling protruding and being retained by a single screw. Unscrewing the screw allowed the panel to be easily removed. Indeed, the evidence suggests that removing the screw would have caused the panel to simply fall by force of gravity. The bundles of marihuana were then in plain view.

■ Defendant contends that removing this ceiling panel exceeded the scope of the consent. He relies on the first of two opinions in *United States v. Ibarra*, 965 F.2d 1354 (5th Cir.1992) (*en banc*). That case produced two *per curiam* opinions, one finding the search reasonable and the other finding it unreasonable. The Court is convinced from reading those opinions, however, that either group of judges would find the search in this case reasonable.

In *Ibarra*, the "unreasonable" view was based on these circumstances:

In the light of the circumstances that led to the consent—that Chambers was only a guest in the house and his "adamant" refusal to sign a Consent to search form—we reject the notion that the simple assent— "That would be all right"—can reasonably and objectively be understood as Chambers' tacit authorization for the police to take a sledgehammer and break their way into a part of the house that had been securely sealed with boards.

965 F.2d at 1358.

In the instant case, Mrs. Dominguez was co-owner of the house, not a mere guest. She did not adamantly refuse to sign a consent but instead signed a complete consent form. Most importantly, there was no

sledgehammer breaking any part of the house. Instead, an apparent "trap door" was opened by the simple expedient of loosening a screw. The forceable breaking of the structure of the house was the key circumstance that divided the court in *Ibarra.* The judges supporting the "reasonable" view specifically rejected the district court's finding that there had been a structural dismantling. Instead, as they viewed the evidence, "The police did not alter the frame of the house; they removed a barrier blocking a visible access that had been created before their arrival." *Id.* at 1360. The conduct in the instant case was much less intrusive than that in *Ibarra.* This conclusion is supported by the very recent decision in *United States v. Flores,* 63 F.3d 1342, 1362 (5th Cir.1995), where the court held that officers who "merely unscrewed two screws and removed two vent covers from the interior panels" of a vehicle were not "dismantling" it in the sledgehammer-sense of *Ibarra. See also United States v. Torres,* 32 F.3d 225, 231–32 (7th Cir.1994) (unscrewing a compartment to gain access to its contents is not unreasonable).

 The Court also concludes that "an objective onlooker could understand (Mrs. Dominguez') general consent to extend to all integral parts of the house—closets, attic, and basement (had there been one) included—in which evidence of drug trafficking ... could be found." 965 F.2d at 1361. At no time did Mrs. Dominguez limit the scope of her consent or attempt to withdraw it. Defendant suggests that she had no opportunity to do so because of evidence that she apparently was sitting in one room during the search and was not following the officers throughout the house. The Fifth Circuit, however, has specifically rejected the notion "that enforcement officials must conduct all searches in plain view of the suspect, and in a manner slowly enough that he may withdraw or delimit his consent at any time during the search." *United States v. Rich,* 992 F.2d 502, 507 (5th Cir.1993). Even assuming Mrs. Dominguez was asked to be seated in a particular room, there is no suggestion that she was prohibited from speaking, giving any instructions or defining any restrictions.

For the foregoing reasons, the motion to suppress is DENIED.