151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Angela v. LLOYD, Defendant-Appellant.
 No. 97-2093.
 United States Court of Appeals, Seventh Circuit.
 Argued April 29, 1998.
Decided May 18, 1998.
 
 Appeal from the United States District Court for the Southern District of Illinois, East St. Louis Division. No. 96 CR 30082-PER Paul E. Riley, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Following a routine traffic stop, Illinois State Police searched Angela Lloyd's van, found large quantities of marihuana, and placed her under arrest. Lloyd moved to suppress the evidence found during the search of her van and to suppress the statements she made after her arrest. After the district court denied her motions, Lloyd pleaded guilty to possession with intent to distribute marihuana and was sentenced to sixty-three months' imprisonment. Lloyd appeals only the district court's denial of her motions to suppress. We affirm.
 
 
 2
 On July 22, 1996, Illinois State Trooper J.D. Wasmuth stopped Lloyd's Nissan van for speeding. Wasmuth checked the van's registration and the driver's licenses of Lloyd and the driver of the van, Cynthia Joiner. Finding that the information was valid, Wasmuth wrote a warning ticket for the speeding violation and filled out a standard Illinois State Police "consent to search" form. Wasmuth returned Joiner's driver's license and informed her that she was free to go. Wasmuth then asked Lloyd to exit the van, returned her license and registration, and told Lloyd that she also was free to go.
 
 
 3
 As Lloyd was walking back to the van, Wasmuth asked Lloyd if she had time for several questions. She responded that she did, and Wasmuth asked her how Joiner had come to be traveling with them. Lloyd's story contradicted the story that Joiner had told Wasmuth previously. Wasmuth next asked Lloyd whether she had any drugs or contraband in her van and she responded no. Wasmuth handed Lloyd the consent to search form to read. He explained the form and indicated that Lloyd had a right to refuse to sign.
 
 
 4
 While Lloyd was consulting with her fellow passengers regarding the form, another trooper, Andrew Conner, arrived on the scene. Wasmuth asked Conner to call the canine unit. When Wasmuth approached Lloyd regarding the consent form, she refused to sign. According to Wasmuth and Conner, however, Lloyd orally consented to a search of the van. Lloyd testified that Wasmuth told her that he would search the vehicle even if she did not consent, and she simply responded "Do what you have got to do."
 
 
 5
 Wasmuth searched the van and found a bundle wrapped in duct tape containing what was later determined to be marihuana and arrested Lloyd. Ultimately, the police discovered 281 pounds of marihuana in the van. After her arrest, Lloyd made several oral statements and a written statement, in which she admitted that she obtained the marihuana in Texas and was traveling to Washington, D.C. to deliver the drugs in exchange for $5,000.
 
 
 6
 On appeal, Lloyd argues that the search of her van was the result of her illegal detention, claiming that she did not feel free to leave when Wasmuth began questioning her. In reviewing the district court's denial of Lloyd's motions to suppress, we review questions of law de novo and questions of fact for clear error. United States v. Gravens, 129 F.3d 974, 978 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1333, 140 L.Ed.2d 494 (1998). " 'Because the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing." ' Id. (quoting United States v. Stribling, 94 F.3d 321, 323 (7th Cir.1996)).
 
 
 7
 Lloyd's subjective belief that she was "seized" is not relevant to whether her detention was legal. Instead, courts apply an objective standard in determining whether an action was lawful under the Fourth Amendment. Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 419, 136 L.Ed.2d 347 (1996)). "[T]he appropriate test for assessing the coercive effect of police conduct is whether a reasonable person, viewing the particular police conduct as a whole and within the setting of all the surrounding circumstances, would have concluded that the officer had in some way restrained her liberty so that she was not free to leave." United States v. Thompson, 106 F.3d 794, 798 (7th Cir.1997). As this court held in Thompson, even if a defendant subjectively perceives a trooper's actions to be coercive, the trooper's actions do not violate the Fourth Amendment if they are objectively reasonable when examined under the totality of the circumstances. Id.
 
 
 8
 Wasmuth's actions were not coercive and Lloyd was not "seized" in violation of the Fourth Amendment. Wasmuth returned Lloyd's documents and, even though not required by under the Fourth Amendment, specifically informed her that she was free to leave. Id.; Robinette, 117 S.Ct. at 419. When Wasmuth asked Lloyd if she would answer a question, she agreed to stay. See Stribling, 94 F.3d at 323-34. By asking Lloyd additional questions, Wasmuth did not illegally detain Lloyd. " '[T]he law is well established that if the officer asks rather than commands, the person accosted is not seized, and so the protections of the Fourth Amendment do not attach ." ' Thompson, 106 F.3d at 798 (quoting United States v. DeBerry, 76 F.3d 884, 885 (7th Cir.1996)).
 
 
 9
 Relying on United States v. Finke, 85 F.3d 1275 (7th Cir.1996), Lloyd argues that she reasonably believed that she was not free to go because she had heard Wasmuth ask Conner to call the canine unit. As the Finke court noted, however, the facts before it were distinguishable from a situation like the present one, in which the officer questions the defendant after returning his documents and telling him that he was free to go. Id. at 1281. In Finke, the police officer told the defendant that he was calling a canine unit when the defendant refused to consent to a search. Id. The court also observed that it was not clear whether the defendant knew that the officer had returned the license of the car's driver and the rental agreement or that the officer had told the driver that he was free to leave.
 
 
 10
 Based on the evidence presented at the suppression hearing, it is questionable whether Lloyd was even aware that a canine unit had been called when she verbally consented to the search. Lloyd now claims that she heard Wasmuth tell Conner to call the canine unit, but Wasmuth and Conner testified that they did not believe Lloyd could have heard their conversation, which took place behind the van while Lloyd was talking to her fellow passengers. Even if Lloyd heard the troopers discussing the canine unit, however, the totality of the circumstances does not warrant the conclusion that a reasonable person would have felt unable to leave. See Thompson, 106 F.3d at 798. "[T]he trooper did everything that the law requires him to do: he returned the defendant's identification to her, informed her of her rights, and explained both what he was doing and why he was doing it." Id. Wasmuth told Lloyd that she was free to go and that she did not have to sign the consent form. He explained that part of his job was to prevent the transport of illegal guns and drugs prior to asking her questions. Because a reasonable person in Lloyd's position would not have concluded that Wasmuth restrained her liberty so that she was not free to leave, there was no Fourth Amendment violation, and the district court properly found that the evidence was not subject to suppression.
 
 
 11
 Lloyd next argues that her consent to search was not voluntary because she felt that she had no choice but to consent under the circumstances. We review the district court's decision that Lloyd's consent was voluntary for clear error. United States v. Chan, 136 F.3d 1158, 1159 (7th Cir.1998) (citing Robinette, 117 S.Ct. at 421). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Courts look at "such factors as the defendant's age, education and intelligence, the advisement of his rights, his custodial status, and the length and possible coercive nature of his detention prior to his consent." United States v. Navarro, 90 F.3d 1245, 1256 (7th Cir.1996) (citations omitted); see also Schneckloth, 412 U.S. at 226.
 
 
 12
 Examining the factors set forth in Schneckloth, the district court did not commit clear error in finding that Lloyd's consent was voluntary. The government established that Lloyd chose to stay and respond to Wasmuth's questions after being told that she was free to leave and that she knew she had the right to refuse to consent. Wasmuth carefully advised Lloyd of her rights and permitted her to consult with her friends regarding the consent to the search. As discussed above, Lloyd was not in custody or "seized" at the time she consented to the search. It is unlikely that Lloyd's detention was of a coercive nature, as she made the choice to refuse to sign the consent form. Moreover, both troopers testified that Lloyd verbally consented to the search.
 
 
 13
 Further, there is nothing in the record to support Lloyd's contention that she intended to limit her consent to the search and permit Wasmuth only to look into the van. " 'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" United States v. Torres, 32 F.3d 225, 231 (7th Cir.1995) (quoting Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Lloyd admitted at the suppression hearing that she did nothing to limit the search when she gave her consent to Wasmuth. Lloyd was present while Wasmuth was searching the van and the suitcases inside and "could (and should) have protested at the time if she believed [Wasmuth] exceeded the scope of her consent, as it was her burden to limit that scope." Stribling, 94 F.3d at 324; see also Torres, 32 F.3d at 231. Because it was objectively reasonable for Wasmuth to conclude that the scope of Lloyd's consent included the suitcases inside of the van, he was not required under Fourth Amendment to obtain more explicit authorization. Jimeno, 500 U.S. at 252.
 
 
 14
 Lloyd also claims that her oral and written statements were the product of her illegal detention and should have been suppressed. Lloyd's entire argument on appeal is that her oral and written statements should be suppressed because she was illegally seized and detained. Because Lloyd was not illegally detained, the district court did not err in denying Lloyd's motion to suppress statements.
 
 
 15
 For the foregoing reasons, we AFFIRM the district court's decision.