UNITED STATES of America

v.

Troy Carzell HOLDER, Appellant.

No. 92–3015.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 9, 1993.

Decided April 16, 1993.

David Kagan–Kans, Washington, DC (appointed by this court), for appellant.

Steven J. Durham, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty.,* John R. Fisher, Roy W. McLeese, III, and Margaret R. Batten, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before: SILBERMAN, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant challenges his conviction on the basis of an allegedly erroneous decision of the district court at a pretrial suppression hearing. He asserts that the police lacked probable cause to arrest him and that therefore the search of his person incident to arrest was illegal. We affirm.

I.

On January 30, 1991, officers of the Metropolitan Police Department executed a search warrant on an apartment in southeast Washington, D.C. When the officers arrived, the door to the apartment was ajar, and as the officers knocked and announced the search it swung open. The officers saw appellant Holder standing in a short entrance hallway that opened onto the living/dining area of the apartment. They held appellant against the wall in the hallway and proceeded into the apartment. On the table in the dining area, approximately five feet away from appellant, the officers saw several ziplock bags containing cocaine base (later determined to be over seven grams), a razor blade, and a plate with crack cocaine on it. Sitting at the table was another individual, Keith Jones, who had a package of cocaine in his hand. No other person was in the apartment.

Jones and appellant Holder were then arrested and searched. The officers found in Holder's pockets a set of keys and 17

* At the time the brief was filed.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

ziplock bags containing crack cocaine. One of the keys opened the lock on a toolbox found in the apartment. In the toolbox were a loaded .357–magnum pistol and 184 ziplock bags holding more than 18 grams of crack cocaine.

Holder moved to suppress the evidence found on him. He argued that the cocaine and keys were the product of an illegal search because the officers did not have probable cause to arrest him. The district court, relying on *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), determined first that the officers had lawfully detained Holder as they began their search of the apartment. The court then held that the discovery of the drugs in plain view only a few feet from Holder gave the officers probable cause to arrest. Holder was subsequently tried before a jury and convicted on several counts of possession with intent to distribute controlled substances and use of a firearm during a narcotics trafficking offense, 18 U.S.C. § 924(c).

## II.

Appellant does not challenge his initial, brief detention but does claim that the police lacked probable cause to arrest him.[1] We review *de novo* the district court's legal conclusion that probable cause supported the arrest, but we examine the court's findings of fact only for clear error. *See United States v. Garrett*, 959 F.2d 1005, 1007 (D.C.Cir.1992). Probable cause exists if a reasonable and prudent police officer would conclude from the totality of the circumstances that a crime has been or is being committed. *See United States v. Green*, 670 F.2d 1148, 1152 (D.C.Cir.1981). Appellant essentially argues that the drug-laden table—indicating that a crime was in progress—gave the officers probable cause to arrest Jones, who was sitting at the

table, but not appellant, who was standing a few feet away. Appellant contends that under the principles outlined in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the police did not have sufficient reason to connect *him* to the drugs in the apartment (which he claimed to be just leaving as a visitor) to create the particularized suspicion that would amount to probable cause for an arrest and search.

In *Ybarra*, police executed a valid search warrant on a tavern where the bartender had been suspected of selling heroin. When the police arrived, they announced that they would "pat down" all present as a "cursory search for weapons." *Id.* at 88, 100 S.Ct. at 341. During the search, one of the patrons of the bar, Ybarra, was found to have six packets of heroin. The Supreme Court held that the search violated the Fourth Amendment (as applied to the states through the Fourteenth Amendment). The Court reasoned that the police had no basis to suspect Ybarra of any crime. He made no suspicious or incriminating gestures, and "[i]n short, the agents knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale." *Id.* at 91, 100 S.Ct. at 342. The officers thus lacked the "probable cause particularized with respect to that person," *id.*, that would be required for an arrest. Nor could the officers justify the pat-down as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because they had no reasonable articulable suspicion that Ybarra was armed and presently dangerous. *See Ybarra*, 444 U.S. at 92–93, 100 S.Ct. at 343.

Appellant relies on the proposition in *Ybarra* that "a person's mere propinquity to others independently suspected of crimi-

---

1. Appellant contends, however, that *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), a case in which the Supreme Court permitted *detention* of a resident while his house was searched, should be read as bearing on the probable cause issue. We frankly do not see the connection in light of appellant's failure to challenge his detention. The

*Michigan v. Summers* analysis, whatever the proper reading of that case, *see United States v. Pace,* 898 F.2d 1218, 1239–40 (7th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), is irrelevant for determining whether the discovery of the drugs and paraphernalia gave probable cause for Holder's arrest.

nal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91, 100 S.Ct. at 342. According to Holder, the same reasoning should lead us to hold that his mere presence in an apartment in which evidence of narcotics activity was discovered did not give rise to probable cause to arrest him. At the time of the arrest, there was no indication that Holder rented the apartment, lived in it, or was in any way connected to it beyond his presence at the time of the search. Holder contends that his connection to the apartment was particularly attenuated because he had opened the door and was about to leave when the officers arrived.

Appellant, however, overlooks the crucial factors that distinguish *Ybarra.* First, the search in *Ybarra* occurred in a public place. Ybarra was simply one patron among many in a bar where the police had reason to believe the bartender had been dealing heroin. There was no indication that Ybarra even knew of the bartender's activities.[2] Access to a private apartment, on the other hand, is presumably limited, and thus a person's admission to the apartment normally would raise a stronger inference of connection to the activities conducted within.

More crucially, in this case the drugs were openly on display, and therefore appellant's proximity to the drugs clearly reflected his knowledge of, and probably his involvement in, narcotics activity. Even if the drugs were not Holder's and instead belonged only to Jones, the circumstances indicated that Jones trusted Holder and considered him sufficiently complicit to allow him a full view of the drug distribution scene. Unlike the situation in *Ybarra,* where the defendant's presence in a public

tavern was itself ostensibly innocent; Holder's presence in a private apartment just a few feet from a table full of cocaine can hardly be so described. This is not a case in which the officers' probable cause depended partly on mere "propinquity to others *independently* suspected of criminal activity." *Id.* at 91, 100 S.Ct. at 342 (emphasis added). The grounds for suspecting Jones applied almost equally to Holder.

The logical inference for the police to draw in this situation was that Holder was either a party to the distribution of drugs or a customer who had just made, or was about to make, a purchase.[3] Of course, it was *possible* that Holder was merely an innocent visitor looking for someone else at the apartment. That he was present, for whatever reason, when the drugs were in plain view, however, makes it more likely than not that he was involved in some way in the criminal activity, and that amply satisfies probable cause. *See United States v. DeLeon,* 979 F.2d 761, 769 (9th Cir.1992) (suggesting that probable cause requires less than a "more likely than not" standard); *United States v. Adcock,* 756 F.2d 346, 347 (5th Cir.) (same), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 847 (1985); *cf. Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) ("In dealing with probable cause ... we deal with probabilities."). Although Holder may be correct that mere presence in an apartment where drugs are found will not, without more, support a *conviction* for possession, *see United States v. Dunn,* 846 F.2d 761, 763–64 (D.C.Cir.1988), the standards required for proof of possession beyond a reasonable doubt and for probable cause for an arrest are quite different.

\*     \*     \*     \*     \*     \*

**2.** The *Ybarra* Court declined to consider a situation in which the search warrant itself authorized the search of unnamed persons found in a particular place. Such a warrant would be based on "probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Ybarra,* 444 U.S. at 92 n. 4, 100 S.Ct. at 342 n. 4. The Court thus held open the possibility that mere presence in some public places could suggest involvement in criminal activity if criminal activity pervaded the public place.

**3.** In this regard, Holder's argument that the door was ajar because he was on his way out does little to aid his case. Whether he was entering, exiting, or merely present, the situation still would have suggested that he was attempting to make a purchase, had just made a purchase, or was involved in the distribution operation himself. All three possibilities involve a crime.

The judgment is therefore affirmed.

*So Ordered.*