1999-NMCA-097

986 P.2d 491

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Maria C. GARCIA, Defendant–Appellant.**

**No. 19,376.**

Court of Appeals of New Mexico.

June 18, 1999.

Certiorari Granted, No. 25,837,
Aug. 11, 1999.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nina LaLevic, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, J.

{1} The prior opinion of the court is withdrawn and the following is substituted. This case poses the question of whether Defendant Maria Garcia's general consent to search a vehicle by responding "yes" to an officer's inquiry to "look at" a compartment on the vehicle was broad enough to allow the police officers to drill a hole in the compartment, thereby damaging the property. We hold that her consent to a general search was not a consent to allow the officers to damage the property. We reverse Defendant's conviction and order that the motion to suppress be granted.

*Facts and Proceedings Below*

{2} New Mexico State Police Officer Roper stopped Defendant for speeding in a 1990 minivan on the National Park Highway between White City, New Mexico and the Texas state line on December 4, 1996. United States Border Patrol Agent Kelly arrived to assist Officer Roper because Agent Kelly spoke Spanish. While on an earlier patrol that day, Agent Kelly had observed the minivan "going side to side and bouncing quite heavily." In his experience, that type of bouncing and swaying would normally be caused by damaged suspension or carrying an unusually heavy object. During the stop, Agent Kelly looked through the window in the back of the minivan and did not see any heavy objects. So he stooped and checked the rear tire and frame. He noted fresh weld marks and welded metal underneath the frame, which, based upon his experience, was not consistent with a newer, normal minivan. Agent Kelly pointed out these marks to Officer Roper.

{3} Agent Kelly asked Defendant and her passenger for permission to search the vehicle. Both Defendant and the passenger consented. Defendant opened the rear of the minivan and Agent Kelly observed that the carpet and screws had been loosened. He also noted "a compartment inconsistency of six to eight inches." Defendant gave further permission to remove the minivan from the side of the road to a nearby weigh station. After additional inspection, Agent Kelly observed that "the shock absorbers on the vehicle were canted more than normal." He also crawled underneath the minivan and noted that when he tapped the underneath with a heavy flashlight, it sounded as "if you filled a can with sand and hit it," as opposed to a normal hollow or echoing sound. Agent Kelly told Defendant that he and Officer Roper thought that there was a compartment in the vehicle that might contain contraband. Agent Kelly asked Defendant to follow the officers into town to a service station and Defendant agreed. He also asked about her knowledge of the compartment and Defendant responded that she knew nothing about it.

{4} Agent Kelly testified that at the service station he told Defendant that the officers were going to "look at" the compartment. The minivan was then placed on a lift. The officers inspected the compartment and could not figure a way to open the compartment without tearing the minivan up. The compartment was apparently welded completely shut. Agent Kelly testified that he had not seen a container that well-made before. The officers proceeded to use a quarter-inch drill bit to drill a hole into the

container. When they did, a green leafy substance fell from the hole and the officers perceived a strong odor of marijuana. · The officers conducted a field test and obtained a positive result for marijuana. Defendant and her passenger were at the service station but outside the garage area, when the officers drilled the hole.

{5} When asked why the officers did not obtain a search warrant, Agent Kelly replied "I've never had one before, sir. Once they've given you permission to search, I've always searched until I found out what was in the compartment." Following the discovery of the marijuana, Officer Roper obtained a search warrant citing four reasons: bouncing of the minivan, unusual compartment, unusual height of the rear seats, and discovery of marijuana from drilling into the compartment.

{6} Following a hearing, the district court issued an order denying Defendant's motion to suppress, stating:

[I]t is clear to the Court that the Defendant understood and agreed to the search. Before the van was raised on the automotive rack, the Defendant was again asked for her consent, this time to search the compartment; the Defendant still cooperated with Agent Kelly and gave her consent. Given the circumstances of how the compartment had been made the Court finds that drilling into the compartment was not such an intrusion as to constitute an unreasonable search.

The district court further ruled that "the Search Warrant which was based upon information gathered from the consensual search was therefore also properly done."

{7} At the subsequent trial, the jury convicted Defendant of possession with intent to distribute a controlled substance. Defendant appeals her conviction, contending that drilling into the compartment without specific permission exceeded the scope of her consent. Defendant further contends that absent reasonable suspicion, Article II, Section 10 of the New Mexico Constitution requires a law enforcement officer to advise a detained motorist that she is free to go at the conclusion of the initial stop. We need only reach the first issue, as it is dispositive. Further, Defendant did not raise the second issue below, thus it is not properly before this Court. *See* Rule 12–216 NMRA 1999.

*Scope of Consent*

{8} Voluntariness of a consent to search is a question of fact. *See State v. Flores,* 1996–NMCA–059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. We review de novo, however, application of the law to the facts. *See State v. Juarez,* 120 N.M. 499, 502, 903 P.2d 241, 244 (Ct.App.1995). The facts are not in dispute that Defendant voluntarily consented three times to the search of her minivan. What is in dispute is the scope of that consent and whether such consent to search included consent to damage property.

{9} "The scope of the search is defined by and limited to the actual consent given." *Flores,* 1996–NMCA–059, ¶ 22, 122 N.M. 84, 920 P.2d 1038. The scope of an individual's consent is measured by an objective reasonableness standard, that is, what a reasonable person would have understood by the exchange between the officer and the suspect. *See id.* ¶ 23; *see also Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). If a search exceeds the scope of consent it is "not pursuant to a voluntary consent," and is therefore invalid. *State v. Valencia Olaya,* 105 N.M. 690, 695, 736 P.2d 495, 500 (Ct.App.1987).

{10} Defendant argues that her consent was for the officers to look at the compartment, not drill a hole into and permanently damage the compartment. The State argues that while the officers may have used the words "look at" the compartment, a reasonable person, having consented to allowing the minivan to be taken to the service station to be looked at, and after already having consented to two other searches or "looks at" the compartment, would have impliedly understood "that the search would include looking into the compartment."

{11} We acknowledge that courts have given broad scope to a consent to a general search of a vehicle for narcotics, interpreting the consent to include non-destructive dismantlement of parts of the vehicle, particularly when the defendant was present at the

time and voiced no objection. For example, in *Valencia Olaya* we held that the scope of the consent included the use of a screwdriver to remove screws holding a loose vent cover in the door panel. *See id.* at 695, 736 P.2d at 500. Federal courts have similarly held that dismantling of property was within the scope of a general consent. *See United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir.1996) (stating that consent to search trunk included allowing officer to lift crinkled carpet area, when the defendant was present but did not object during the search); *United States v. Flores*, 63 F.3d 1342, 1362 (5th Cir.1995) (holding that signed consent to search vehicle and its containers and contents included the unscrewing of two screws and the removal of two vent covers, when the defendant was present but did not object during the search); *United States v.. Torres*, 32 F.3d 225, 231–32 (7th Cir.1994) (holding that the oral and signed consent to search vehicle and its contents and containers included the removal of screws to gain access to wooden box, when the defendant was present but did not object during the search); *United States v. Santurio*, 29 F.3d 550, 552–53 (10th Cir.1994) (holding that consent to search interior of car included removal of screws from strips holding down carpeting); *cf. United States v. Pena*, 143 F.3d 1363, 1368 (10th Cir.1998) (holding that consent to search motel room reasonably included "search into the area above the bathroom ceiling").

■ {12} However, when the search involves intentional damage to property, the courts require more certain evidence that the scope of the consent extended that far. "Although an individual consenting to a vehicle search should expect that search to be thorough, he need not anticipate that the search will involve the destruction of his vehicle, its parts or contents." *United States v. Strickland*, 902 F.2d 937, 942 (11th Cir.1990). In *Torres*, while the Seventh Circuit upheld the removal of screws as within the scope of consent, it acknowledged that the scope of a general consent search does not include "the unnecessary infliction of damage." *Torres*, 32 F.3d at 232. Likewise in *Santurio*, the Tenth Circuit noted that the removal of screws and strips of carpeting was within the scope of general consent to search because

the officer did not "tear up" the vehicle. *See Santurio*, 29 F.3d at 553. *But see United States v. Martel–Martines*, 988 F.2d 855, 858 (8th Cir.1993) (holding that the defendant's general consent included allowing officers to use a hammer and screwdriver to puncture sheet metal top of hidden compartment because the defendant stood and watched); *United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir.1992) (stating that general consent to search storage unit authorized officers to pry open and break trunk lock of car stored there because voluntary consent to search can be the same scope as pursuant to a valid warrant); *United States v. Olivier–Becerril*, 861 F.2d 424, 425 (5th Cir.1988) (upholding finding of voluntariness of consent at border checkpoint when agents pierced hole in floor of trunk; however, the court did not discuss scope of consent).

■ {13} As Professor LaFave notes, even with a general and unqualified consent, "the police do not have carte blanche to do whatever they please." 3 Wayne R. LaFave, *Search and Seizure* § 8.1(c), at 612 (3d ed.1996). The scope of the consent " 'is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.' " *Id.* (quoting *Strickland*, 902 F.2d at 941).

{14} We agree with Defendant that the officers' damage to the minivan was outside the scope of Defendant's consent to a general search. In contrast to *Martel–Martines*, 988 F.2d 855, in which the Eighth Circuit upheld a search to the defendant's vehicle as constitutional despite the damage police inflicted upon it because the defendant stood and watched and did not object, in the present case Defendant was outside the garage area of the service station when the officers drilled the hole. She did not imply consent by failing to object while the officers drilled the hole outside of her immediate range of view. *See id.* at 858 ("[Defendant's] failure to object made it objectively reasonable for the officers to conclude that his general consent to search the truck included consent to access the compartment in a minimally intrusive manner.").

{15} The State also equates drilling a hole in the compartment in this case to the search of a paper bag as was allowed by the United States Supreme Court in *Jimeno* because "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801. The State argues that the compartment had no legitimate usefulness; therefore, it must be for concealment of contraband because narcotics are generally hidden. However, the State fails to point out that *Jimeno* also concluded that while a paper bag could be searched, "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk." *Id.* at 251–52, 111 S.Ct. 1801.

{16} The State further contends that drilling a small hole into the compartment was the least intrusive search because it caused minimal damage to the compartment. But the test is not whether the officers acted reasonably in the pursuit of crime. It is whether they reasonably interpreted the scope of the consent. In our view, Defendant's consent to permit the officers to "look at" her vehicle could not reasonably be interpreted to encompass drilling into the vehicle.

*Probable Cause*

 {17} The State, relying on *Strickland*, 902 F.2d at 942, further argues that the officers had probable cause to search the hidden compartment. The Eleventh Circuit in *Strickland* stated that while consent to search did not include slashing the spare tire to search its contents, "probable cause, coupled with the obvious exigency that the vehicle could disappear with the contraband if it was not searched immediately, made the warrantless search of the spare tire permissible." *Id.* In *State v. Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1, our Supreme Court determined that Article II, Section 10 of the New Mexico Constitution requires that a warrantless search of an automobile be based upon probable cause and exigent circumstances. Probable cause is not enough to allow for a warrantless search. *See Gomez*, 1997–NMSC–006, ¶¶ 37–38, 122

N.M. 777, 932 P.2d 1. In the district court, however, the State did not argue that the search could be upheld on the basis of probable cause and exigent circumstances. We need not affirm on a ground not raised below, if it would be unfair to appellant to do so. *See State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994).

*Conclusion*

{18} Defendant's consent did not encompass drilling into the minivan. We reverse Defendant's conviction and remand for a new trial. We order that Defendant's motion to suppress be granted.

{19} **IT IS SO ORDERED.**

HARTZ and ARMIJO, JJ., concur.