2003-NMCA-152

81 P.3d 611

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Kurt Dewayne FAIRRES,
Defendant–Appellant.**

**No. 22652.**

Court of Appeals of New Mexico.

Nov. 13, 2003.

Certiorari Denied, No. 28,398,
Dec. 16, 2003.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Appellee.

John B. Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Chief J.

{1} Defendant Kurt Dewayne Fairres pleaded no contest to possession of methamphetamine, reserving his right to appeal the district court's denial of his motion to suppress. On appeal, Defendant challenges the denial of the motion to suppress as well as his enhanced sentence as a habitual offender. We uphold the district court's denial of the motion to suppress, but reverse Defendant's sentence because the district court applied the habitual offender statute, NMSA 1978, § 31–18–17(B) (1993), to a conditional discharge granted under NMSA 1978, § 30–31–28(A) (1972) of the Controlled Substances Act.

*Motion to Suppress*

{2} On November 25, 2000, Detective Rodney Morris of the Roswell Police Department responded to a call that shots had been fired at a residence where Defendant was a visitor. After Detective Morris entered the

residence and while he was waiting for the homeowner in the living room, he observed a plate on the living room floor with marijuana and drug paraphernalia on it. He arrested the homeowner for possession of the marijuana and searched him, finding a substance later identified as methamphetamine. He informed those present in the house that he was investigating both the "shots fired" call and the possession of the illegal drugs. Additionally, he informed them that he was going to apply for a search warrant and that they were not free to leave the house. Officer Brad MacFadden arrived at the residence and also observed the marijuana on a plate in the living room. Defendant then asked if he could be searched and allowed to leave. Officer MacFadden searched Defendant and found a white, powdery substance he suspected to be illegal drugs in Defendant's wallet. Defendant was arrested and gave a statement at the police station, admitting that the substance was methamphetamine and explaining that the loud noise at the house that was the subject of the "shots fired" call was caused by his igniting a large firecracker and blowing up a cordless drill.

■ {3} On appeal, Defendant contends that the district court erred in not granting the motion to suppress by ruling that: Defendant does not have standing to contest the police entry; the police officers had a reasonable basis to believe that Defendant had a connection to the premises or to criminal activity; Defendant voluntarily consented to the search; and the scope of the search did not exceed Defendant's consent. Defendant's arguments raise mixed questions of law and fact, which we review de novo, weighing the facts in the manner most favorable to the State as the prevailing party. *State v. Attaway*, 117 N.M. 141, 145–46, 870 P.2d 103, 107–08 (1994); *State v. Chapman*, 1999–NMCA–106, ¶ 12, 127 N.M. 721, 986 P.2d 1122.

■ {4} Defendant argued to the district court that he was subject to an illegal search and seizure because the police officers did not have a right to enter the residence without a warrant and no exigent circumstances existed to permit the entry. The district court's conclusion that Defendant did not have standing to object to the officers' entry depends upon whether Defendant had a reasonable expectation of privacy within the residence. *State v. Wright*, 119 N.M. 559, 562–63, 893 P.2d 455, 458–59 (Ct.App. 1995). A reasonable expectation of privacy is constitutionally protected. *Id.* at 563, 893 P.2d at 459. To establish his standing, Defendant must show subjectively, by his conduct, that he had an expectation of privacy, and objectively that his expectation was reasonable. *Id.*

{5} Detective Morris testified that when he arrived at the residence, the front door was open, but the accompanying screen door was closed. One person walked to the doorway, saw him, and returned to the back of the house. A second person came to the door and held the screen door open. As this person called for people from the back of the house, including the homeowner, Detective Morris stepped inside. The homeowner and four other persons, including Defendant, returned to the living room.

{6} In *Wright*, this Court held that a person has a reasonable expectation of privacy in another's house, in a bedroom, with the door closed. *Id.* at 563–64, 893 P.2d at 459–60. In this case, Defendant was among the group of people in the living room in the presence of marijuana. He did not make any specific showing concerning his expectation of privacy. The record supports the district court's determination that Defendant did not have a reasonable expectation of privacy and therefore did not have standing to contest Detective Morris's entry.

■ {7} Defendant further maintains that the police did not have a reasonable basis to connect Defendant to the residence or the criminal activity and thus could not detain him. In *State v. Graves*, 119 N.M. 89, 888 P.2d 971 (Ct.App.1994), relied on by Defendant, this Court addressed the rights of visitors during the execution of a search warrant. We held that visitors cannot be detained unless there is a reasonable basis to believe that the visitor is connected to the premises or to criminal activity based on the totality of the circumstances. *Id.* at 92, 94, 888 P.2d at 974, 976. The same principle

applies when a police officer has a valid basis to be on private property by consent without a warrant. *State v. Cassola*, 2001–NMCA–072, ¶ 14, 130 N.M. 791, 32 P.3d 800. Although Defendant argued in district court that *Graves* does not apply because Detective Morris was not lawfully present in the living room, he does not make this argument on appeal. We therefore assume, without deciding, that Detective Morris had a valid basis to be present. *See English v. English*, 118 N.M. 170, 175, 879 P.2d 802, 807 (Ct.App. 1994) (stating that issues not argued on appeal are deemed abandoned).

{8} "[A] police officer may detain a person in order to investigate possible criminal activity, even if there is no probable cause to make an arrest," based on reasonable suspicion that a crime is being or has been committed. *State v. Cobbs*, 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). Such reasonable suspicion is subject to an objective test based upon specific articulable facts and reasonable inferences from those facts. *Id.*

{9} Detective Morris observed Defendant in the living room in the presence of illegal drugs and drug paraphernalia. Although the investigation did not originally involve drugs, the officers could reasonably expand the scope of the investigation based on the reasonable suspicion of criminal activity. *State v. Taylor*, 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246. Detective Morris's observation of the marijuana and drug paraphernalia and the homeowner's possession of alleged drugs on his person provided this reasonable suspicion. Defendant's proximity to the marijuana and drug paraphernalia in the living room gave the officers a reasonable basis to believe that Defendant had a connection to the presence of the marijuana and drug paraphernalia so as to reasonably detain him as part of the investigation. *See Graves*, 119 N.M. at 93, 888 P.2d at 975 (citing *United States v. Holder*, 990 F.2d 1327, 1329 (D.C.Cir.1993), to illustrate that detention would be justified in a case in which a person was found inside an apartment being searched "five feet from a drug-laden table").

{10} Defendant additionally raises two issues concerning the search: that his consent to the search was not voluntary; and that the scope of the search exceeded his consent. We review the district court's factual determinations that Defendant's consent was voluntary and based on substantial evidence considering the totality of circumstances. *Chapman*, 1999–NMCA–106, ¶ 19, 127 N.M. 721, 986 P.2d 1122; *State v. Garcia*, 1999–NMCA–097, ¶ 8, 127 N.M. 695, 986 P.2d 491.

{11} Even in the absence of probable cause or a search warrant, a search will generally be lawful, if the person searched has given a voluntary consent. *State v. Duffy*, 1998–NMSC–014, ¶ 72, 126 N.M. 132, 967 P.2d 807. Defendant argues that his consent was not voluntary because it was the product of duress caused by the officers. *See State v. Paul T.*, 1999–NMSC–037, ¶ 28, 128 N.M. 360, 993 P.2d 74 (stating that a voluntary consent may not be a product of duress). This Court has described duress or coercion in this context as involving "police overreaching that overcomes the will of the defendant." *Chapman*, 1999–NMCA–106, ¶ 21, 127 N.M. 721, 986 P.2d 1122.

{12} *State v. Shaulis–Powell*, 1999–NMCA–090, 127 N.M. 667, 986 P.2d 463, is also instructive to our analysis. In *Shaulis–Powell*, one of the defendants argued that his consent to a search was the result of duress or coercion because "the officers told him that they had enough evidence to obtain a search warrant," and "his refusal would have been futile." *Id.* ¶ 10. We held that the statement of one of the officers that he felt or believed that he had enough evidence to obtain a search warrant was "simply the officer's assessment of the situation," which was not coercion or duress. *Id.* ¶ 11. We stated that a suspect's consent to search would be valid, even if an officer informed the suspect that the officer would get a warrant, if there was probable cause to support the warrant. *Id.* ¶ 12. Without force or threat, Detective Morris stated his assessment of the situation that he intended to seek a search warrant. According to Officer MacFadden's testimony, Detective Morris may have offered the opportunity to consent

to a search before the warrant was obtained. Defendant approached and advised the officers that he wished to be searched so that he could leave the premises. The warrant was ultimately issued. The district court had substantial evidence to conclude that Defendant's consent was not derived by duress or coercion.

{13} Substantial evidence also supports the district court's finding that the search did not exceed Defendant's consent. *See Garcia,* 1999–NMCA–097, ¶ 9, 127 N.M. 695, 986 P.2d 491 (stating that the scope of a search is limited to the consent given as measured by an objective reasonableness standard). Defendant affirmatively volunteered to be searched. He did not express any restriction to the search or protest the search of his pockets or his wallet.

*Habitual Offender Enhancement*

{14} The State filed a supplemental information seeking to enhance Defendant's sentence by one year under the habitual offender statute based in part on a prior conviction for possession of a controlled substance in 1999. In that case, the Bernalillo County District Court granted Defendant a conditional discharge for a first offense of possession of a controlled substance under Section 30–31–28(A), deferred sentence, and placed Defendant on supervised probation for eighteen months. At the conclusion of the probation, the Bernalillo County District Court entered an order of dismissal on conditional discharge (unsatisfactory) dismissing Defendant's case while noting that Defendant did not satisfactorily complete his probationary period.

{15} The district court in this case concluded that the conditional discharge could be used for enhancement under the habitual offender statute and ordered a one-year enhancement of Defendant's sentence. We review this ruling de novo as a matter of statutory construction. *State v. Smith,* 2000–NMCA–101, ¶ 4, 129 N.M. 738, 13 P.3d 470.

{16} As originally enacted, the habitual offender statute did not include sentence enhancement for a felony conviction under the Controlled Substances Act. In 1983, the legislature amended the habitual offender statute to add such convictions. The habitual offender statute also did not originally include conditional discharge as a form of conviction eligible for enhancement. The legislature effected that amendment in 1993 by including a conditional discharge as equivalent to a felony conviction for habitual sentencing enhancement purposes.

{17} Although subsequently amended in 2002 and 2003, the habitual offender statute, as amended in 1993, and as applicable to this case, provided:

B. Any person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred one prior felony conviction which was part of a separate transaction or occurrence or conditional discharge under Section 31–20–7 NMSA 1978 [31–20–13 NMSA 1978] is a habitual offender and his basic sentence shall be increased by one year, and the sentence imposed by this subsection shall not be suspended or deferred.

Section 31–18–17(B).

{18} The Controlled Substances Act, under which Defendant received his conditional discharge, reads:

A. If any person who has not previously been convicted of violating the laws of any state or any laws of the United States relating to narcotic drugs, marijuana, hallucinogenic or depressant or stimulant substances, is found guilty of a violation of Section 23 [30–31–23 NMSA 1978], after trial or upon a plea of guilty, the court may, without entering a judgment of guilty and with the consent of the person, defer further proceedings and place him on probation upon reasonable conditions and for a period, not to exceed one year, as the court may prescribe.

B. Upon violation of a condition of the probation, the court may enter an adjudication of guilt and proceed as otherwise provided. The court may, in its discretion, dismiss the proceedings against the person and discharge him from probation before the expiration of the maximum period prescribed from the person's probation.

C. If during the period of his probation the person does not violate any of the conditions of the probation, then upon expiration of the period the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt, but a non-public record shall be retained by the attorney general solely for the purpose of use by the courts in determining whether or not, in subsequent proceedings, the person qualifies under this section. A discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime including the penalties prescribed under this section for second or subsequent convictions or for any other purpose. Discharge and dismissal under this section may occur only once with respect to any person.

Section 30–31–28(A)–(C).

{19} Is there a conflict between the habitual offender statute provisions that allow enhancement for felony convictions under the Controlled Substances Act as well as for conditional discharges and the Controlled Substances Act provision that precludes the consideration of a conditional discharge under that Act as a conviction? We think not.

{20} Although it is clear that the 1983 amendment to the habitual offender statute addresses the possession of controlled substances, and it is clear that the 1993 amendment addresses conditional discharges, it is not clear that the two amendments are related. The assumption that they both relate to controlled substances derives from the role of a conditional discharge in the Controlled Substances Act. However, upon close reading, the inclusion of a conditional discharge as a felony conviction in the habitual offender statute does not relate to the Controlled Substances Act.

{21} The legislature so stated. The express language of the 1993 amendment added "conditional discharge under Section 31–20–7 NMSA 1978 [31–20–13 NMSA 1978]." Section 31–18–17(B). NMSA 1978, § 31–20–7 (1977), which addressed the period of a deferred or suspended sentence, was repealed in 1985. NMSA 1978, § 31–20–13(A) (1994),

enacted in 1993, allows a conditional discharge for a first felony offense when a deferred or suspended sentence is also authorized. The legislature did not, in its 1993 amendment of the habitual offender statute, include a conditional discharge under the Controlled Substances Act. Instead, it referenced only the contemporaneously enacted general conditional discharge statute. The conditional discharge provision of the Controlled Substances Act is different in material ways: it addresses consequences of a specific crime rather than a general range of crimes and it specifically states that a conditional discharge under the Controlled Substances Act cannot be deemed a conviction. Section 30–31–28(C). Without reference to the Controlled Substances Act in the habitual offender statute amendment when the general conditional discharge statute is specifically referenced, we infer that the legislature intended that a conditional discharge under the Controlled Substances Act continues to be distinct from the newly enacted general conditional discharge and that a conditional discharge under the Controlled Substances Act continues to not be a conviction as provided in Section 30–31–28(C). *See Kahrs v. Sanchez*, 1998–NMCA–037, ¶ 24, 125 N.M. 1, 956 P.2d 132 (stating that court presumes that the legislature is aware of existing law, that it enacts new statutes consistent with existing law, and that repeal by implications is disfavored).

{22} As a result, although the habitual offender statute applies to a prior felony conviction under the Controlled Substances Act, it does not apply if there is a conditional discharge under the Controlled Substances Act. The State does not argue that the Bernalillo County District Court sentenced Defendant under the general conditional discharge statute. Therefore, if the Controlled Substances Act was properly followed, Defendant's conditional discharge did not subject him to sentence enhancement.

{23} The State argues that the Controlled Substances Act was not properly followed and does not preclude sentence enhancement because Section 30–31–28 requires a defendant to complete probation without violation prior to dismissal, and Defendant did not satisfactorily complete his probation. However, the Controlled Sub-

stances Act does not make this requirement. The satisfactory performance of the conditions of probation is required for the court to effect a discharge and dismiss proceedings. Section 30–31–28(C). The Bernalillo County District Court exercised its discretion and dismissed the proceedings against Defendant despite Defendant's violation of his probation. The issue of Defendant's performance during his probation was not before the district court in this case.

*Conclusion*

{24}   We affirm Defendant's conviction of possession of methamphetamine and reverse the enhancement of Defendant's sentence under the habitual offender statute.

{25}   IT IS SO ORDERED.

SUTIN and ROBINSON, JJ., concur.