This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36855**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAMES K. KECK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Defendant has appealed from a conviction for possession of marijuana, contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2019). He challenges the denial of a motion to suppress evidence obtained in the course of a search, contending that his consent was coerced. We affirm.

## BACKGROUND

**{2}**     Defendant was previously convicted of an offense, as a consequence of which he is required to periodically register, pursuant to the Sex Offender Registration and Notification Act (SORNA), NMSA 1978, 29-11A-1 to -10 (1995, as amended through 2013). In satisfaction of that requirement Defendant visited the Lincoln County Sheriff's Office on October 25, 2014. Commander Brack Rains of the Lincoln County Narcotics Enforcement Unit took the opportunity to question Defendant about a tip that he had received. At the outset, Commander Rains read Defendant his *Miranda* rights and asked if Defendant understood. Defendant responded affirmatively. Commander Rains then asked if Defendant would talk to him about marijuana that he had heard Defendant was growing. After a brief pause Defendant admitted that he had one plant growing on his property. Commander Rains said he had been told that Defendant had more than one plant. Defendant responded, "Well, you can go ahead and come to my house any time, sir." Commander Rains replied that they would do so immediately, and offered Defendant a ride. Defendant indicated that he did not want the police to go while his wife and children were present. Commander Rains stated, "we need to do it," but said they would proceed "discreetly." Defendant replied, "No, we can go, let's go now." Officer Rains started to explain that the other option would be for him to obtain a search warrant, but Defendant stopped him. After further discussion about the quantity of marijuana and its location on the premises, they traveled to Defendant's property, where the ensuing search yielded a significant quantity of marijuana.

**{3}**     Defendant filed a motion to suppress the evidence obtained in the course of the search. The district court conducted a hearing on the motion, during which it reviewed an audio recording of the interview and heard arguments. Defendant contended that his consent was involuntary because the encounter at the sheriff's office was involuntary, the *Miranda* advisory was cursory, and both the situation and the officer's statements were intimidating. The State responded that the encounter was voluntary insofar as Defendant was not in custody, and argued that it was permissible for Commander Rains to ask Defendant about the tip he had received. The district court ultimately denied the motion to suppress. Defendant challenges that determination on appeal.

**STANDARD OF REVIEW**

**{4}**     The denial of a motion to suppress presents a mixed question of fact and law. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. The appellate court reviews the facts for substantial evidence, deferring to the lower court's findings. *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. We review the application of the law to the facts de novo. *Almanzar*, 2014-NMSC-001, ¶ 9.

**DISCUSSION**

**{5}**     "A search and seizure conducted without a warrant is unreasonable unless it is shown to fall within one of the exceptions to the warrant requirement." *State v. Diaz*, 1996-NMCA-104, ¶ 8, 122 N.M. 384, 925 P.2d 4. Among the recognized exceptions is consent. *Id.* ¶ 9. Generally, the prosecution bears the burden of proving that, under the totality of the circumstances, "the consent given to search [was] voluntary and not a

product of duress, coercion, or other vitiating factors." *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74.

**{6}** "The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." *State v. Davis*, 2013-NMSC-028, ¶ 13, 304 P.3d 10.

**{7}** "Courts utilize a three-tiered analysis when determining voluntariness: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Id.* ¶ 14 (internal quotation marks and citation omitted). "Because the third prong is an acknowledgment of our presumption against waiving constitutional rights, we focus on the first two prongs." *Id.* "Ultimately, the essential inquiry is whether [the d]efendant's will has been overborne." *State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292.

**{8}** We do not understand Defendant to dispute the fact that he consented specifically and unequivocally to the search. However, Defendant contends that his consent was coerced.

**{9}** "Specific factors indicating coercion include the use of force, brandishing of weapons, threat of violence or arrest, lengthy and abusive questioning, deprivation of food or water and promises of leniency in exchange for consent." *Davis*, 2013-NMSC-028, ¶ 23. In this case, there has been no suggestion that any of those factors were present.

**{10}** "On the other hand, factors [indicating] voluntariness can include the individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent." *Id.* ¶ 24 (internal quotation marks and citation omitted). In this case, the district court noted that Defendant was not "unsavvy to the system." Although Defendant takes issue with this assessment, we decline to disturb it. *See generally State v. Martinez*, 2018-NMSC-007, ¶ 15, 410 P.3d 186 ("Factfinding frequently involves selecting which inferences to draw. An appellate court must indulge in all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary. (alteration, internal quotation marks, and citations omitted)).

**{11}** The circumstances of the encounter and the manner in which consent was obtained also largely support voluntariness. Defendant was not arrested or formally detained, he was read his *Miranda* rights, and he spontaneously offered his consent. These are highly significant considerations. *See, e.g.*, *State v. Cohen*, 1985-NMSC-111, ¶ 21, 103 N.M. 558, 711 P.2d 3 (indicating that reading the defendant his *Miranda* rights before his consent was sought, and his statement that he understood, supported a finding of voluntariness); *State v. Lowe*, 2004-NMCA-054, ¶¶ 1, 20-21, 135 N.M. 520, 90 P.3d 539 (indicating that the defendant's spontaneous offer of permission to search,

after an officer inquired about drugs, constituted valid consent); *State v. Fairres*, 2003-NMCA-152, ¶¶ 2, 12, 134 N.M. 668, 81 P.3d 611 (holding that consent was not coerced where the defendant volunteered his permission to search). Ultimately, these circumstances support the district court's determination that Defendant's consent was voluntary.

**{12}** In his briefs Defendant focuses on subtler considerations. He contends that the police station was an inherently intimidating environment, and his presence there was mandatory, in the sense that he was required to register. Defendant further notes that he was subject to a statutory duty to communicate honestly with law enforcement in relation to the registration requirement. Finally, Defendant suggests that Commander Rains' "abrupt" demeanor, the hurried manner in which the *Miranda* advisory was communicated, the intimidation that Defendant might not have been free to leave, and the pointed inquiry about marijuana should be regarded as coercive. On balance, however, we conclude that these considerations are not sufficiently compelling to require a different result. *See State v. Goss*, 1991-NMCA-003, ¶¶ 20-21, 111 N.M. 530, 807 P.2d 228 (holding that even though "the contested evidence was subject to conflicting interpretations and inferences, the trial court as the fact[-]finder was empowered to weigh the evidence" and find that voluntary consent was given).

**{13}** We understand Defendant to further contend that the encounter itself was not consensual, given the mandatory nature of the registration requirement, and that this rendered his consent involuntary. We disagree with both the premise and the suggested conclusion. "A consensual encounter has been defined as simply the voluntary cooperation of a private citizen in response to a non-coercive questioning by a law enforcement official." *State v. Figueroa*, 2010-NMCA-048, ¶ 28, 148 N.M. 811, 242 P.3d 378 (internal quotation marks and citation omitted). Although Defendant's appearance at the sheriff's department may have been mandatory, his participation in the interview could nevertheless be regarded as consensual, particularly in light of the fact that he was advised that he was not required to answer questions, and he elected to speak with Commander Rains rather than terminating the interview. *See id.* ¶¶ 29-31 (explaining that we consider all of the surrounding circumstances). In any event, Defendant's argument conflates distinct legal concepts. Even if we were to assume that the encounter was not consensual, his consent could be voluntarily given. *See, e.g.*, *Lowe*, 2004-NMCA-054, ¶¶ 1, 20-21 (holding that the defendant's spontaneous offer of permission to search, in the course of an investigatory detention, constituted valid consent); *Fairres*, 2003-NMCA-152, ¶¶ 2, 12 (holding that consent was voluntary notwithstanding the fact that the defendant had been detained in connection with a drug investigation and was not free to leave). Accordingly, we reject Defendant's argument.

**{14}** Finally, Defendant suggests that Commander Rains somehow circumvented his constitutional duty to obtain a warrant by capitalizing on Defendant's appearance at the police station to "extract" Defendant's consent to the ensuing search. However, Defendant does not explain this argument, other than to suggest a parallel with authority prohibiting law enforcement officers from using probation and parole officers as "surrogates" to conduct warrantless searches that they could not conduct themselves.

Nothing of that nature occurred in this case, and we do not find the situations to be analogous. Officer Rains did not utilize the SORNA registration requirement as a means of conducting a search; he simply took the opportunity to inquire with Defendant about a tip. And as previously described, Defendant promptly volunteered his consent to the ensuing search. "Lawful, non-coercive police activity does not in and of itself constitute the type of duress that makes consent involuntary." *State v. Chapman*, 1999-NMCA-106, ¶ 24, 127 N.M. 721, 986 P.2d 1122. Insofar as Defendant voluntarily consented, Commander Rains cannot be said to have circumvented his duty to obtain a warrant. *See State v. Sneed*, 1966-NMSC-104, ¶ 7, 76 N.M. 349, 414 P.2d 858 ("A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search.").

**CONCLUSION**

**{15}** For the foregoing reasons, we conclude that the motion to suppress was properly denied. We therefore affirm.

**{16} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**