This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37991**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VICTOR T. GARCIA, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM
Victor E. Sanchez, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Following a conditional plea, Defendant Victor T. Garcia, Jr., appeals the district court's order denying his motion to suppress. We affirm.

## BACKGROUND

**{2}**     The charges in this case arose after Defendant was stopped while exiting a residence that law enforcement had cleared of occupants and for which they were seeking a search warrant. Defendant moved to suppress his statements to law enforcement and the evidence discovered during the stop, arguing his warrantless seizure was unreasonable under the Fourth Amendment to the United States Constitution.[1] After a hearing, the district court denied the motion in a short written order, without making factual findings to support its decision. "In such circumstances, we generally draw all inferences and indulge all presumptions in favor of the district court's ruling," *State v. Taylor E.*, 2016-NMCA-100, ¶ 9, 385 P.3d 639, and we view the evidence "in the light most favorable to affirmance," *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211. With these principles in mind, we consider the following facts derived from the testimony at the suppression hearing.

**{3}**     Defendant was visiting Sabrina Martinez when her probation officer arrived to conduct a home visit. While walking through Martinez's residence, the probation officer located a parole absconder hiding in a shower. In the adjacent bedroom, the probation officer observed items of drug paraphernalia in plain sight. The officer detained the absconder, notified law enforcement, and informed responding officers about the paraphernalia. At some point, law enforcement apparently decided to seek a search warrant for the residence.

**{4}**     Sergeant Rafael Aguilar, one of the responding officers, testified that he and another officer, Detective Albert Sena, were called out to assist in securing the residence because drug paraphernalia was found in the home. Aguilar testified that another officer told them that the resident (i.e., Martinez) had been taken into custody and that nobody was inside the residence. Sena consistently testified that he was called out to assist with securing a residence for a search warrant for the Region 5 Drug Task Force, and that he understood the residence to be unoccupied and secured.

**{5}**     Aguilar drove around the back of the residence and Sena remained in the front. While seated in his vehicle, Sena saw Defendant come out the front door.[2] This "freaked out" Sena, because, as he explained, this was the first time in his eighteen years of law enforcement that he had observed someone coming out of a residence that should have been secured. This was very concerning to Sena because he did not know who Defendant was, whether he was armed, or what he was doing inside the already-secured residence; Sena testified there was no reason for Defendant to be inside the residence. Further, when Defendant exited the front door, Sena's view of Defendant was obstructed, and all he could see of Defendant was his face. In response to the

---

[1]Although Defendant cited Article II, Section 10 of the New Mexico Constitution in his suppression motion, he makes no distinct state constitutional argument on appeal, and we therefore do not separately analyze his arguments under the New Mexico Constitution.

[2]Defendant contends he "was doing what the officers at the scene of the incident wanted: he was vacating the premises." Defendant suggests that the residence had not in fact been cleared and that he had remained inside until the time Sena saw him exit the front door. This view of the evidence is not consistent with the testimony at the suppression hearing and is contrary to our obligation on appeal to examine the evidence in the light most favorable to affirmance. *See Aragon*, 1999-NMCA-060, ¶ 10.

situation, Sena got out of his vehicle, drew his firearm, and ordered Defendant to come toward him.

**{6}** Although Defendant initially complied with Sena's commands, Defendant turned his back to Sena, dropped his hands, and began stuffing something in his pants. By that point, Aguilar had returned to the front of the residence, where he observed Defendant with his hands in his pants. Both Sena and Aguilar testified that they were concerned Defendant was attempting to conceal something, such as a weapon, narcotics, or contraband. Eventually, officers found methamphetamine on Defendant.

**{7}** After the district court denied Defendant's suppression motion, Defendant pled guilty to possession of a controlled substance and tampering with evidence, but reserved his right to appeal the suppression ruling.

## STANDARD OF REVIEW

**{8}** The State bears the burden of proving facts that justify a warrantless seizure. *State v. Martinez*, 1997-NMCA-048, ¶ 9, 123 N.M. 405, 940 P.2d 1200. As noted, however, we indulge all reasonable inferences in support of the district court's ruling and view the evidence in the light most favorable to that ruling. *See Taylor E.*, 2016-NMCA-100, ¶ 9; *Aragon*, 1999-NMCA-060, ¶ 10. Our review of the district court's application of the law to the facts is de novo. *See State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. Nevertheless, it is Defendant's burden to clearly demonstrate that the district court erred. *See Aragon*, 1999-NMCA-060, ¶ 10 (recognizing a presumption of correctness in the district court's rulings and explaining that it is the appellant's burden on appeal to demonstrate any claimed error below).

## DISCUSSION

**{9}** Neither party disputes that Defendant was seized at the moment when Sena ordered him to come toward him, or that the seizure was not supported by probable cause. *See generally State v. Graves*, 1994-NMCA-151, ¶ 9, 119 N.M. 89, 888 P.2d 971 ("The traditional justification for detention is probable cause."). The parties instead dispute the applicability of an exception to the probable cause requirement—the exception recognized by the United States Supreme Court in *Michigan v. Summers*, 452 U.S. 692 (1981), and later extended by this Court in *Graves*, for detentions incident to premises searches. "In *Summers*, the United States Supreme Court established another limited exception to the probable cause requirement and ruled that a resident of the premises being searched [pursuant to a warrant] could be detained for the duration of the search." *Graves*, 1994-NMCA-151, ¶ 10; *see Summers*, 452 U.S. at 705. *Graves*, in turn, examined whether the *Summers* exception extended to non-residents present at the time a warrant is executed. *Graves*, 1994-NMCA-151, ¶ 12. In that situation, this Court ruled that "mere presence" was not enough—there must be "presence plus" to justify the detention of a non-resident. *See id.* ¶¶ 14-15, 17; *see also id.* ¶ 16 (providing that "to justify the detention of visitors there must be facts present that would render it reasonable under the circumstances"). Under the "presence plus" approach, law

enforcement may detain a non-resident during the execution of a search warrant only if they have "a reasonable basis to believe that the non-resident has some type of connection to the premises or to criminal activity." *Id.* ¶ 8.

**{10}** On appeal, Defendant argues two reasons his seizure cannot be justified under *Summers*.[3] First, Defendant argues that the "presence plus" standard was not satisfied because he did not have a connection to the premises or to the criminal activity. Second, Defendant briefly contends that the *Summers* exception cannot apply in the absence of a search warrant and that there was no evidence that a search warrant was obtained in this case. We address each contention in turn.

## I.    "Presence Plus" Was Satisfied

**{11}** Viewing the facts and circumstances known to Sena in the light most favorable to the district court's ruling, as we must, we conclude that the "presence plus" standard was satisfied at the time of Defendant's seizure.[4] *See Aragon*, 1999-NMCA-060, ¶ 10; *State v. Madsen*, 2000-NMCA-050, ¶ 16, 129 N.M. 251, 5 P.3d 573 (considering the information known to the officers at the time of the seizure in resolving the "presence plus" issue); *cf. State v. Ochoa*, 2008-NMSC-023, ¶ 21, 143 N.M. 749, 182 P.3d 130 (providing that "generally, an officer may reasonably rely on information from another officer that a crime has been or is being committed").

**{12}** In this case, Defendant was seen exiting a private home to which access presumably was limited. This raises an inference that Defendant was connected to the activities in the home. *See United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993) (providing that access to a private apartment, in contrast to a public place, "is presumably limited, and thus a person's admission to the apartment normally would

---

3Defendant also contends that the seizure was not supported by reasonable suspicion. The State, however, does not attempt to justify the seizure on reasonable suspicion grounds and relies exclusively on the *Summers* exception on appeal. We, therefore, limit our analysis accordingly.

4We are not persuaded by the State's contention, supported only by *State v. Goodridge*, A-1-CA-34580, mem. op. (N.M. Ct. App. Sept. 24, 2015) (nonprecedential), an unpublished, summary calendar memorandum opinion from this Court, that the "presence plus" test requires "*either* (1) a reasonable belief that the visitor has a connection to the premises to be searched or the criminal activity and/*or* (2) a reasonable furtherance of legitimate law enforcement interests." *Id.* ¶ 4 (emphases added). We understand the State to argue that the furtherance of legitimate law enforcement interests is sufficient to meet the "presence plus" standard. However, the exception in *Summers* (as extended in *Graves* to "presence plus" non-residents) was recognized, in part, *because* it furthers legitimate law enforcement interests. *See Summers*, 452 U.S. at 700-03 (examining both the character of the official intrusion and its justification—i.e., legitimate law enforcement interests—to determine whether an exception to the probable cause requirement should be recognized). In other words, the law enforcement interests the State identifies do not provide an independent basis to satisfy "presence plus." *Cf. id.* at 705 n.19 (providing that the balancing of competing interests inherent in the exception to the probable cause requirement adopted in *Summers* "must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers" (internal quotation marks and citation omitted)). To the extent *Goodridge* may be read to the contrary, it is not binding on this Court. *See State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[U]npublished orders, decisions, or memorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties.").

raise a stronger inference of connection to the activities conducted within"), *cited with approval in Graves*, 1994-NMCA-151, ¶ 15. The timing of Defendant's presence in the residence also is significant—he was there after Martinez had been arrested and taken into custody and after the residence had been cleared for the purpose of obtaining a search warrant. This demonstrates a level of access to, or control over, the residence beyond that of a mere visitor. *See Graves*, 1994-NMCA-151, ¶ 16 (explaining that the *Summers* exception relates to a person's "control over premises which are the subject of a search warrant" because such control "provides a sufficient connection with the suspected illegal activities so that it is reasonable to detain *that* individual for the duration of the search" (internal quotation marks and citation omitted)). Further, Defendant had free rein of the Martinez residence, in which law enforcement believed there was probable cause of ongoing criminal activity and, in fact, where drug paraphernalia was observed in plain sight. *Cf. United States v. Pace*, 898 F.2d 1218, 1240 (7th Cir. 1990) (holding that, where the defendants were inside the residence in which the implements of drug trafficking were laying in the open, it was reasonable to conclude the defendants had been invited to the residence, and were not there merely by happenstance, and further holding there was probable cause to believe they were involved in the drug operation), *cited with approval in Graves*, 1994-NMCA-151, ¶ 15; *Holder*, 990 F.2d at 1329 (holding that the defendant's presence in a private apartment a few feet from the implements of criminal activity amply satisfied probable cause).

**{13}** In sum, Defendant's presence inside the Martinez residence—after Martinez's arrest, after the premises had been cleared for the purpose of obtaining a search warrant, and where drug paraphernalia was in plain sight—was sufficient to establish a reasonable belief that Defendant had "some type of connection to the premises or to criminal activity." *Graves*, 1994-NMCA-151, ¶ 8. *Compare id.* ¶ 16 (providing that a person's control over the premises may render the detention reasonable), *with State v. Martinez*, 1996-NMCA-109, ¶¶ 7, 35, 122 N.M. 476, 927 P.2d 31 (concluding that the "presence plus" test was not satisfied where there was no reason to believe the defendant, who had arrived at the residence and knocked on the door during a search, was connected to the criminal activity occurring inside). Under the circumstances, we conclude that the "presence plus" standard was satisfied.

## II.    Defendant Has Not Persuaded Us That the Application of the *Summers* Exception in the Absence of a Warrant Was Error

**{14}** As an additional basis for reversal, Defendant briefly argues that the *Summers* exception, as recognized and extended in *Graves*, applies only when a search warrant has been obtained and is being executed, and that there is no proof in the record that this had occurred here. Yet Defendant does not engage in a discussion about the importance of a search warrant to the *Summers* exception or explain why the absence of a search warrant would or should render the exception inapplicable. Instead, Defendant quotes *Summers* and *Graves*—both of which involved search warrants—and baldly contends that "New Mexico has never extended the 'presence plus' test to situations where a warrant has not actually been obtained and executed." That is inaccurate.

**{15}** This Court in *State v. Cassola*, 2001-NMCA-072, 130 N.M. 791, 32 P.3d 800, held that when officers are lawfully on private property either under a warrant *or* by consent, *Graves* applies. *See Cassola*, 2001-NMCA-072, ¶ 14; *see also State v. Fairres*, 2003-NMCA-152, ¶ 7, 134 N.M. 668, 81 P.3d 611 (citing *Cassola* for the proposition that "when a police officer has a valid basis to be on private property by consent without a warrant," *Graves* applies). Defendant does not contend that law enforcement was not lawfully at the Martinez residence when he was seized. Nor does Defendant explain why, in light of the foregoing authorities and the officers' presumed lawful presence, the *Summers* exception, as recognized and extended in *Graves*, would not apply here.

**{16}** While we do not foreclose the possibility that we might someday reach the conclusion that the *Summers* exception is limited to situations in which a search warrant has been obtained and is being executed—were we presented with a well-developed and persuasive argument supporting such a result—Defendant fails to present such an argument today, and it is not our role to develop that argument for him. *See, e.g.*, *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error." (citation omitted)). In the absence of a reasoned explanation why the *Summers* exception ought not to be applied in this context, we will not reverse the district court on that basis. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review undeveloped arguments); *Aragon*, 1999-NMCA-060, ¶ 10 (presuming the correctness in the district court's rulings and providing that it is the appellant's burden on appeal to clearly demonstrate that the district court erred).

**CONCLUSION**

**{17}** For the foregoing reasons, we affirm the district court.

**{18} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**